TIDEWATER ASSOCIATED OIL CO. et al. v. ALE et al.

No. 30522. Nov. 10, 1942.

*130 P. 2d 991.*

Pierce & Rucker, of Oklahoma City, and A. M. Covington, of Tulsa, for petitioners.

Nash & May, of Drumright, and Mac Q. Williamson, Atty. Gen., for respondents.

DAVISON, J. This is an original proceeding in this court brought by Tidewater Associated Oil Company, hereinafter referred to as petitioner, and its insurance carrier, to obtain a review of an award made by the State Industrial Commission in favor of Lester S. Ale, hereinafter referred to as respondent.

The award granted compensation for temporary total and temporary partial disability which was the result of a cerebral hemorrhage. The commission found that a fall which respondent had sustained on June 23, 1940, had aggravated a pre-existing condition which respondent had, and brought on the cerebral hemorrhage which resulted in partial paralysis.

The petitioner and its insurance carrier contend that the finding by the commission that the paralytic condition resulted from the accidental injury which respondent sustained when he fell is without support by any competent evidence. It is also contended in the alternative that proper credit for previous payment was not given. These two contentions will be discussed separately.

The record discloses that respondent was a man 63 years of age, and that he had worked continuously for petitioner over a period of more than 21 years. That the petitioner was an oil company and that the nature of respondent's work was that of a "general repair man" in the oil fields. That respondent had never lost any time from his work on account of sickness or other disability with the exception of one occasion when he was off work for a few days with a mashed toe. That sometime prior to the injury respondent had a high blood pressure condition which had been treated by Dr. Reynolds, but, according to the testimony of this doctor and the respondent, this condition had been reduced to a normal range sometime before the accident. That the accidental injury occurred while the respondent was using both hands in tightening a nut on an eccentric power when the wrench he was using slipped from the nut causing him to fall backward from the concrete platform upon which he was working to the ground, some 16 inches below. That in falling he struck a pipe with his back. That immediately after this fall respondent noticed that his back had been slightly injured and that his left foot had become numb and that his left toe was dragging. That he had never felt any similar sensations. That respondent went home after the accident and has not been able to work since. That on the night immediately following the accident he vomited. The next day his condition was worse and he went to a doctor. Several days later he was sent to a hospital, his condition gradually growing worse, and in the course of a short time lost complete control of his left leg.

The disability which respondent had was of such character as to require a determination of its cause, nature, and extent by skilled and professional persons, and therefore had to be proved by the testimony of such persons. Texas Company v. State Industrial Commission, 183 Okla. 461, 83 P. 2d 369. The medical witnesses who testified at the hearing to determine liability and the cause and extent thereof were in agree-

ment upon the fact that respondent had a partial paralysis caused by a cerebral hemorrhage and that this was the proximate cause of his disability. These witnesses were also in agreement with respect to the fact that respondent was disabled to perform ordinary manual labor and would probably be so disabled for at least a considerable period of time.

The question before the commission was whether the disability was caused in whole or in part by the accident.

None of the doctors testified directly or positively that in their opinion the hemorrhage and resulting paralysis were caused by the fall, but, upon examination of the medical testimony coupled with the time of the injury, the inferences and circumstances of the disability, we must conclude that the commission had some substantial evidence upon which to base an opinion that the fall was at least a contributing cause of the hemorrhage. The medical testimony is to the effect that there are four possible conditions which may give rise to a disability of the nature here involved: (1) strain, (2) stress (the fall), (3) anger, and (4) advanced years in general. There is no evidence of the presence of any of these conditions except the fall and the age of respondent. Dr. Wilkins, who examined respondent at the request of petitioner and testified in petitioner's behalf, stated, "Generally, we just think if he had marked symptoms at the time he fell down, then you would say this fall precipitated it, that maybe it didn't cause it entirely but at least was the precipitating factor." In connection with evidence of "marked symptoms" at the time he fell, we find that respondent testified as to what happened after the fall. He stated that he first walked to his car, which was about 50 feet away, and that his left toe was practically dragging on the ground so that the first marked symptom was present immediately after the fall. Then again, Dr. Wilkins testified, "yet there is a sufficient chain of events from that period (that is, the time of the fall) to cause me to say that I am just not able to divorce the man's cerebral condition entirely from the strain and all of falling. Certainly, had he not had the high blood pressure and the diseased vessels, I don't think that fall would have done anything at all." The following question was also asked of Dr. Wilkins by attorney for petitioner and the following answer given:

"Q. You are not able to say now, doctor, from your examination and your study of the case that the incident, the strain or the fall had anything to do with it?"

"A. I am not able positively to say."

The above-named witness on cross-examination stated that he would not say that the fall didn't cause the disability. The following question was then asked the same witness and the following answer given.

"Q. That shows, I believe, doctor, a gradual development, . . . from the time of the accident, is that not true? A. Yes; that certainly suggests something was starting out at that time."

The doctor was not called upon to testify positively, one way or the other, as to the positive cause of the disability, and in fact, under the circumstances of this case, it would have been impossible for an honest doctor, such as Dr. Wilkins appeared to be, to have given a positive answer. The practice of medicine is not an exact science and especially so in regard to the human brain.

Summing up the testimony of this witness, however, we believe the commission was justified in concluding that his evidence as a whole was to the effect that he could not account for the claimant's condition other than connecting it with the fall. His evidence was really more convincing and more worthy of belief than if he had stated that the disability was or was not caused in whole or in part by the fall.

Under all of the facts and circumstances surrounding this case, the commission had proper grounds to find a causal connection between the fall and respondent's present disability, and we so hold. The cases from this jurisdic-

tion cited by petitioner holding that an award to be sustainable must be based upon something more substantial than speculation, surmise, or conjecture are inapplicable to the factual situation here presented. The finding of fact of the State Industrial Commission on non-jurisdictional questions when supported by any competent evidence is conclusive upon this court. See Protho v. Nette, 173 Okla. 114, 46 P. 2d 942, and many other cases from this jurisdiction.

The petitioner also discusses the fact that respondent had been given disability rating by the Veterans Bureau for a condition entirely different from the nature of the disability with which we are here confronted. This is entirely immaterial and irrelevant. Protho v. Nette, supra.

We now come to the petitioner's contention that the commission erred in not allowing credit for certain alleged payments made to respondent, and in support thereof petitioner relies on the case of Galey & Molloy v. Belt, 187 Okla. 318, 102 P. 2d 868. We are of the opinion that the holding in the above-cited case is correct. However, the cited case appears to be inapplicable here for the reason that apparently the money paid the respondent after the injury was paid, not by the petitioner as compensation, but by reason of an insurance policy afforded by the joint efforts of petitioner and respondent. The evidence is not clear as to the exact source and purpose of payments made to respondent after the injury, but apparently said payments were made from an insurance fund into which respondent paid a portion of the premiums. We reach this conclusion by the statement in petitioner's brief wherein it is stated "he (referring to respondent) has been materially aided by an insurance policy afforded by the joint efforts of the employee and employer." Under 85 O. S. 1941 § 45, no benefits, savings or insurance of the injured employee shall be considered in determining the compensation or benefit to be paid under the Workmen's Compensation Act.

The award is sustained.

OSBORN, BAYLESS, HURST, and ARNOLD, JJ., concur. GIBSON, J., dissents. WELCH, C. J., CORN, V. C. J., and RILEY, J., absent.