2001 OK 59

Barbara ROBINSON, Plaintiff–Appellant,

v.

BORG–WARNER PROTECTIVE SER-VICES CORPORATION, a Delaware Corporation, d/b/a Burns International Security Services, an Oklahoma Compa-ny, Ron Fletcher, individually, John Richardson, individually, and Barbara Johnson, individually, Defendants–Ap-pellees.

No. 94,658.

Supreme Court of Oklahoma.

July 3, 2001.

Beverley Q. Watts, Watts & Watts, Oklahoma City, OK, for Plaintiff–Appellant.

Kevin T. Gassaway, Gassaway & Love, Tulsa, OK, for Defendants–Appellees.

## OPINION

WATT, Vice Chief Justice,

### FACTS AND PROCEDURAL BACKGROUND

¶ 1 Plaintiff, Barbara Robinson, was a resident of Comanche Park Apartments, an apartment complex in Tulsa, Oklahoma managed by the Tulsa Housing Administration. The complex was gated and staffed by Borg–Warner security officers. On the evening of August 3, 1996, Robinson's son, Landry Davison, drove up to the gatehouse at the complex in his 1996 Lexus automobile, accompanied by his wife and three small children. Defendant, Barbara Johnson, was a Borg–Warner security officer and was the gate guard. Johnson, as required by the rules of the Administration, asked Davison for photo identification but Davison had forgotten his wallet and could not provide it. Because of Davison's lack of photo identification, Johnson refused to allow Davison's car through the gate; Davison then called his mother on his cellular phone.

¶ 2 Johnson ultimately raised the gate but the reason she did so is disputed. As a result of the delay caused by Davison's lack of photo identification, several cars were in line behind Davison's car waiting to drive through the gate. Johnson and two other Borg–Warner security officers who were with her in the gatehouse, defendants Ron Fletcher and John Richerson,[1] all testified that Johnson had told Davison that she was raising the gate in order for Davison to turn around and leave the complex. But Davison and his wife testified that Johnson raised the gate to let them into the complex because Johnson knew Davison's mother, Mrs. Robin-

son. Once the gate was raised Davison did not turn around but instead drove to his mother's apartment.

¶ 3 Fletcher and Richerson were foot patrol officers and pursued Davison on foot to the parking area in front of Mrs. Robinson's apartment, where they intended to arrest Davison for trespassing. The nature of the conversation between the arresting officers and Davison is disputed. The officers testified that they told Davison he was under arrest and would be detained until the Tulsa city police arrived but that Davison ignored them and attempted to walk off. Davison testified, however, that the officers made rude comments about the car he was driving and cursed him. It is undisputed that a struggle then ensued between the officers and Davison; while the officers were attempting to subdue and handcuff Davison the two officers sprayed him with pepper spray. Meanwhile, Mrs. Robinson joined the altercation both verbally and physically and the officers sprayed her with pepper spray while attempting to subdue her; they then handcuffed her, too. At the request of one of the two foot patrol officers, Richerson, assault and battery charges were filed against both Davison and Mrs. Robinson. The charges were later dismissed by the City of Tulsa Municipal Court, apparently because the officers who had arrested Davison and Mrs. Robinson failed to receive a message that they were to appear in court to testify.

¶ 4 Mrs. Robinson sued Borg–Warner and its employees, the three security officers, for her injuries. Robinson sued the individual defendants for assault and battery, malicious prosecution, and intentional infliction of emotional distress; Robinson sued Borg–Warner for negligent hiring, training and supervision. Mrs. Robinson dismissed her claim for intentional infliction of emotional distress against Officer Johnson. Ultimately, the trial court dismissed or granted motions for directed verdict on all Mrs. Robinson's other claims against Officer Johnson. The trial court also granted Officer Fletcher's motion for directed verdict on Mrs. Robinson's claim of malicious prosecution. Mrs. Robinson did not appeal from the trial court's rulings on these

---

1. John Richerson was incorrectly identified in the style of the case as "John *Richardson*."

issues. The remaining issues against the remaining defendants were submitted to the jury. At the conclusion of a six-day jury trial, the jury returned verdicts in favor of all defendants on all issues. Mrs. Robinson filed a motion for new trial, which the trial court denied, and Mrs. Robinson appealed.

## ISSUES

¶ 5 We are presented with two issues in this appeal:

I. Did the trial court commit reversible error when it declined to grant Mrs. Robinson's motion for new trial on the ground that a venireman had been guilty of misconduct?

II. Did the trial court commit reversible error by permitting cross examination of Mrs. Robinson concerning her use of her ex-husband's health insurance?

We answer "no" with respect to both issues.

## DISCUSSION

### I.

■ ¶ 6 A venireman, L., was excused from the jury panel when it came to light that his wife was employed in the law office of counsel for the defendants. Mrs. Robinson claims that L. later spoke with an alternate juror, B., and that this prejudiced Mrs. Robinson's right to a fair trial. The record, however, does not support Mrs. Robinson's contention.

¶ 7 The trial court made extensive findings of fact and conclusions of law in its order denying Mrs. Robinson's motion for new trial. The trial court found that L. had been called to the jury box during *voir dire*, but was immediately excused when he divulged that his wife was employed as a legal assistant in the law office of defendants' counsel. On the second day of trial, Mrs. Robinson's lawyer said that L. had been observed in the hall outside the courtroom talking to an alternate juror, B. At that time, L. was questioned by the court in the presence of both counsel. L. told the court and counsel that

he had had a brief conversation with B., but that they had not discussed the case. L. also told the court that he had not talked with any other juror or alternate juror. B. did not deliberate or vote on a verdict in the case because she was an alternate juror who was dismissed from the jury at the conclusion of the presentation of the evidence. The trial court found that L.'s testimony was credible. No record was made on the issue of juror misconduct. The trial court asked Mrs. Robinson's counsel if he wanted to request an evidentiary hearing concerning the incident but counsel declined to do so.[2] Mrs. Robinson did not move for mistrial.

■ ¶ 8 Our consideration of this issue must be limited to the facts found by the trial court in his findings of fact and conclusions of law. There is no testimony or other evidence in the record to support Mrs. Robinson' claim that the trial court erred in refusing to grant her motion for new trial on this ground. An appellate court will not accept nor consider unsupported statements in a brief unless supported by the record. *Price v. Price*, 1970 OK 116 ¶ 8, 471 P.2d 894. The trial court's findings and conclusions are reasonable and are not contradicted by the record. Thus, those findings present no grounds for reversal.

¶ 9 The cases Mrs. Robinson relies on do not support her position. In *Davis v. Sams*, 1975 OK 157, 542 P.2d 943, we reversed the trial court for having failed to grant a mistrial and a motion for new trial where the jury witnessed an altercation between opposing counsel and the parties apparently agreed that the case could have been retried in two hours. Here, by contrast, Mrs. Robinson did not make a record of the claimed misconduct, did not move for mistrial, and the case required six days to be tried.

¶ 10 In *Barnhart v. International Harvester Company*, 1968 OK 49, 441 P.2d 1000, an insurance adjuster for the defendant had gone to a juror's home during the trial and

---

2. Mrs. Robinson refers in her brief to an affidavit of the alternate juror, B., which Mrs. Robinson attached as an exhibit to her brief in support of her motion for new trial. Alternate juror B.'s affidavit, however is not a part of the record as Mrs. Robinson did not designate her brief in support of her motion for new trial for inclusion in the record on appeal. As noted in the body of the opinion, Mrs. Robinson declined to obtain B.'s testimony, although she was granted leave to do so.

discussed the case at length. Here, the record supports the trial court's finding that L. had not discussed the case with anyone. In *Garvin v. Harrell*, 1910 OK 329, 113 P. 186, and *Jones v. Frank*, 1916 OK 1021, 161 P. 795, a party bought meals for jurors during the trial. No such misconduct has been shown here.

¶ 11 The record before us does not support Mrs. Robinson's claim that the trial court committed reversible error when it overruled her motion for new trial on the ground that L. had been guilty of prejudicial misconduct. We hold, therefore, that the trial court did not err when it denied Mrs. Robinson's motion for new trial on this ground.

## II.

██ ¶ 12 Mrs. Robinson argues that the trial court committed prejudicial error in allowing defendants to cross-examine Mrs. Robinson in an attempt to establish that she had misrepresented to health care providers that she was married to Lee Robinson when, in fact, the couple had been divorced since the mid–1980s. Lee Robinson was a Postal Service employee and had kept Mrs. Robinson and her children insured under his Postal Service health coverage. The trial court conducted several hearings in an attempt to decide whether and under what circumstances to admit evidence that Mrs. Robinson had misrepresented that she was Lee Robinson's wife. The trial court ruled that defendants could question Mrs. Robinson about her use of her ex-husband's health insurance but only if defendants called Mrs. Robinson for that purpose after having laid a foundation through other witnesses that Mrs. Robinson had provided false information to others. The trial court also held, however, that defendants would be allowed to cross-examine Mrs. Robinson on the issue if Mrs. Robinson raised it first.

¶ 13 Mrs. Robinson's counsel told the jury in his opening statement that Mrs. Robinson and Lee Robinson were divorced but that Lee Robinson had agreed to continue to provide health insurance benefits to Mrs. Robinson and her children during their minority.

Mrs. Robinson testified on direct examination about the facts surrounding her use of her ex-husband's health insurance. On cross-examination, defendants proved that Mrs. Robinson claimed a right to use her ex-husband's insurance card despite their divorce. Mrs. Robinson also admitted that she had, even after her divorce from Lee Robinson and her marriage to another man, described herself as Lee Robinson's wife in medical forms she had completed. Mrs. Robinson contends that the trial court's decision to admit this evidence constituted reversible error. We disagree.

██ ¶ 14 Mrs. Robinson claims that the trial court erred in admitting the evidence of her use of Lee Robinson's health insurance under 12 O.S.1991 § 2403.[3] Section 2403 allows for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice ..." A trial court has broad discretion in making a ruling under § 2403. "As the reviewing court, however, we will not overturn the trial court's ruling under Section 2403 unless there is a clear abuse of discretion." *Tansy v. Dacomed Corporation*, 1994 OK 146 ¶ 31, 890 P.2d 881, 889. For the reasons discussed in the balance of this opinion we hold that the trial court acted within its discretion in determining that the probative value of the evidence outweighed the danger of unfair prejudice.

¶ 15 Mrs. Robinson claims that the trial court erred in allowing evidence of her use of her ex-husband's medical insurance because that proof improperly informed the jury of a fringe benefit. Mrs. Robinson cites in support of this argument, among other cases, *Handy v. City of Lawton*, 1992 OK 111, 835 P.2d 870. In *Handy* we did not consider the admissibility of such evidence. There, the issue was whether the defendant would be allowed to offset from the judgment against it certain insurance benefits it had provided to the plaintiff, its employee, as a fringe benefit. Here, the evidence concerning Mrs. Robinson's use of Lee Robinson's health in-

---

**3.** Title 12 O.S.1991 § 2403 Provides:

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the is- sues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.

surance was offered solely on the issue of Mrs. Robinson's credibility.

¶ 16 Mrs. Robinson cites *Nitzel v. Jackson*, 1994 OK 49 ¶ 1, 879 P.2d 1222, which cited *Porter v. Manes*, 1959 OK 239, 347 P.2d 210, for the proposition that evidence of health insurance is inadmissible because, "Such insurance is a collateral source which may not inure to the benefit of the defendant and it is inadmissible at trial." Neither *Nitzel* not *Porter*, however, considered whether proof relevant to a party's credibility is inadmissible simply because it proves the existence of health insurance. We hold that whether such evidence is admissible is within the sound discretion of the trial court. Unless the trial court abuses that discretion it will not be reversed for having admitted it. Here, the trial court instructed the jury that the jury should not reduce any damage award it made to Mrs. Robinson by any amounts she received in health insurance benefits.[4] The trial court adequately protected Mrs. Robinson's rights when it instructed the jury that Mrs. Robinson's health insurance was a collateral source and was not available to defendants to reduce Mrs. Robinson's damages.

¶ 17 Mrs. Robinson first mentioned to the jury the existence of health insurance, apparently as a preemptive measure. Under these circumstances she will not be heard to complain that she is entitled to a new trial after having lost a jury trial. It was for the jury to judge the importance of this proof, if any.

Title 12 O.S.1991 § 2608(B) provides that a party's credibility may be attacked on cross-examination by proving "specific instances of the conduct of a witness for the purpose of attacking or supporting his credibility."[5] In *Moses v. Haney*, 1986 OK 62, 725 P.2d 866 we held:

Section 2608(B) clearly recognizes that in ruling on the admissibility of impeachment evidence on cross examination of the witness the trial court has broad discretion, and unless there is a clear abuse of that discretion, the decision will not be reversed on appeal. . . .

We hold that the trial court acted within its discretion when it allowed the cross-examination of Mrs. Robinson on the issue of her use of her ex-husband's health insurance.

## SUMMARY

¶ 18 The trial court did not commit reversible error when it denied Mrs. Robinson's motion for new trial. Mrs. Robinson failed to make a record of the claimed misconduct of venireman L. and did not move for a mistrial. The trial court's findings of fact on this issue are not contradicted by the record. The trial court's conclusion of law on this issue based on its findings of fact were reasonable and, therefore, not subject to reversal.

¶ 19 Mrs. Robinson failed to show that the trial court abused its discretion when it decided to allow defendants to cross-examine

---

4. The trial court's Instruction to the jury No. 41 reads as follows:

Documents have been admitted into evidence showing that the Plaintiff received health insurance benefits for certain medical expenses. You are instructed that a wrongdoer who commits a tort is liable for the whole loss caused by his actions, and any compensation received by the injured party from a collateral source, wholly independent of the wrongdoer, will not lessen the damages recoverable from the wrongdoer. You are instructed that the amount of any health insurance benefits received by Barbara Robinson should not be deducted from any actual damage amount you may award to her.

5. Title 12 O.S.1991 § 2608 provides:
A. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, subject to these limitations:
1. The evidence may refer only to character for truthfulness or untruthfulness; and

2. Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked.
B. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Section 609 of this Code, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness if they:
1. Concern his character for truthfulness or untruthfulness;
2. Concern the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
C. The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

Mrs. Robinson concerning her use of her ex-husband's health insurance card. Mrs. Robinson raised the issue before the jury herself. Further, her rights were adequately protected by the trial court's instruction to the jury that her health insurance benefits were a collateral source and could not be deducted from any damages she might be awarded.

¶20 JUDGMENT OF THE DISTRICT COURT AFFIRMED.

¶21 HARGRAVE, C.J., and WATT, V.C.J., and HODGES, LAVENDER, SUMMERS, BOUDREAU, and WINCHESTER, JJ., concur.

¶22 OPALA, J., concurs in judgment.

¶23 KAUGER, J., concurs in result.