2002 OK 17

Gary ARMSTRONG, Petitioner,

v.

UNIT DRILLING, Liberty Mutual Insurance and the Workers' Compensation Court, Respondents.

No. 95,999.

Supreme Court of Oklahoma.

March 12, 2002.

Eddie L. Carr, Jack D. Crews, Tulsa, OK, for Petitioner.

James B. Cassody, Paul V. McGivern, Jr., McGivern, Gilliard & Curthoys, Tulsa, OK, for Respondents.

## OPINION

WATT, Vice Chief Justice.

### FACTS AND PROCEDURAL BACKGROUND

¶1 In 1993 the Workers' Compensation Court, Hon. Terry Pendell, entered an order finding that Petitioner, Gary Armstrong, had sustained an accidental personal injury to his chest and had suffered a heart attack. The court held that Armstrong was totally and permanently disabled as a result of his injury and ordered,

THAT respondent and insurance carrier shall pay all reasonable medical expenses incurred by claimant as a result of said injury.

Respondents, Unit Drilling and Liberty Mutual, appealed the trial court's ruling to a three-judge panel of the Workers' Compensation Court, which affirmed the trial court's order.

¶2 It is undisputed that Armstrong sought continuing medical maintenance at the 1993 hearing of his claim. Further, for six years after the entry of the 1993 Workers' Compensation Court's order, Respondents paid for Armstrong's prescription drugs. In 1999 Respondents ceased paying for Armstrong's prescriptions and in 2000 Armstrong filed a request with the Workers' Compensation Court for an order requiring Respondents to continue to pay for his prescriptions.

¶3 On March 2, 2001, the Workers' Compensation Court, Hon. James Filosa, denied Armstrong's request that Respondents be required to continue paying for Armstrong's prescriptions. The court so ruled on the following grounds:

THAT, although the claimant requested continuing medical maintenance at the last hearing on permanency, the trial judge failed to make a finding on that issue. The order as written became final without appeal. The respondent's payment for prescription medications for a significant period of time thereafter was gratuitous in nature and without legal effect or requirement.

THAT the claimant has not established or sought a change of condition for the worse in the claim/matter alleged herein and thus is without standing to request continuing medical maintenance to maintain the status quo of permanency previously adjudicated by the Court on DECEMBER 29, 1993, at which the Court was silent on this issue.

Armstrong appealed and the Court of Civil Appeals, Division 1, affirmed the trial court. We granted certiorari on November 26, 2001.

### ISSUES

#### I.

¶4 Did the trial court err when it held that Respondents' continuing payment of Armstrong's expenses was "gratuitous"?

#### II.

¶5 Did the trial court err when it held that Armstrong was required to prove his condition had worsened as a prerequisite to establishing his right to an order from the Workers' Compensation Court requiring Respondents to continue paying for Armstrong's prescriptions?

¶6 We hold that the trial court erred in holding that Respondents' payment of Armstrong's prescription bills was "gratuitous." We also hold that the trial court erred in holding that Armstrong was required to prove a change of condition as a prerequisite

to establishing his right to continued payment of his prescription drug costs.

## DISCUSSION

¶ 7 Respondents resist Armstrong's argument that they should continue to pay Armstrong's prescription bills on the ground that the silence of the Workers' Compensation Court's 1993 order with respect to the payment of future prescription costs bars Armstrong from now seeking payment of prescription costs and that their continued payment of these costs for six years was "voluntary." We disagree.

■ ¶ 8 At the 1993 hearing, Armstrong expressly requested that Respondents be ordered to pay his continuing prescription costs and Respondents did pay those costs for the next six years. Further, the transcript of the 1993 hearing reveals that Respondents did not expressly resist Armstrong's claim for continuing prescription costs. Instead, Respondents focused their defense on their claim that Armstrong's heart attack was not causally related to his on-the-job injury—a claim that the trial court expressly rejected. These factors convince us that Armstrong is entitled to an order requiring Respondents to continue to pay those of Armstrong's prescription costs that they paid between 1993 and 1999.

¶ 9 Respondents contend that *Schlumberger v. Drummond*, 1992 OK CIV APP 152, 842 P.2d 371 and *Bill Hodges Truck Co. v. Gillum*, 1989 OK 86, 774 P.2d 1063, support their argument that Armstrong was obliged to appeal from the 1993 Workers' Compensation Court order or be barred from recovering his continuing prescription costs.[1] Our opinions in *Schlumberger* and *Bill Hodges Truck* involved facts that differ significantly from the facts before us here. Here, as noted, Armstrong had expressly asked for continuing prescription costs in the trial

court but the claimant had not done so in either *Schlumberger* or *Bill Hodges Truck.* Obviously, in neither *Schlumberger* nor *Bill Hodges Truck* did the employer ever pay for continuing prescription costs because the claimant had never asked for them. Further, in *Bill Hodges Truck*, we distinguished the facts presented there from the type of condition that makes it clear that long term health service is required, which the passage of time will not eliminate. We distinguished the issue there, whether claimant was entitled to an organ transplant without first showing a change of condition, from the situation presented in *Orrick Stone v. Jeffries*, 1971 OK 116, 488 P.2d 1243. In *Orrick*, the claimant was a quadriplegic who clearly required continuing medical services. We explained the *Orrick* rule in *Bill Hodges Truck* 1989 OK 86 at ¶ 9, 774 P.2d at 1066:

> Recurrence of temporary disability is not required for an order directing the employer's provision of day-to-day maintenance care. The law authorizes that type of health services without a need for showing a postaward change of conditions.

■ ¶ 10 Our holding in *Bill Hodges Truck* was based on our conclusion that the medical service sought by the claimant, an organ transplant, was not the sort of service the law authorizes to be awarded without a showing of a change of condition.[2] Here, however, it was clear from the beginning that Armstrong's heart disease would require him to take a variety of heart medications on a permanent basis. Thus, Armstrong was not required to show that his condition had worsened in order to be entitled to continue to receive the medicines made necessary by his heart condition.

■ ¶ 11 Respondents' argument that they paid Armstrong's continuing prescription costs "voluntarily" is unconvincing. It seems clear to us that Respondents paid those costs

---

1. *Schlumberger* and *Bill Hodges Truck* stand for the proposition that, in a proper case, a claimant will be held prohibited from seeking the payment of continuing medical expenses if the order finding disability did not address the issue of continuing medical expense and has become final. For the reasons discussed in the body of this opinion we hold that this is not such a case.

2. The relevant statute is 85 O.S.2000 § 14 (A)(1), which provides in material part:

   The employer shall promptly provide for an injured employee such medical, surgical or other attendance or treatment, nurse and hospital service, *medicine*, crutches, and apparatus as may be necessary after the injury . . .
   [Emphasis added.]

because they had interpreted the 1993 Workers' Compensation Court order as having required them to do so. In this connection, it seems especially unfair to hold that Armstrong's failure to appeal the 1993 order deprives him of his right to enforce his right to continuing medical expense payment when Respondents were paying those costs at the time the 1993 order became final. Thus, Respondents will not be heard to resist the interpretation of the 1993 order that they themselves were placing on it when it became final.

¶ 12 We conclude that the parties, and apparently the original trial judge, interpreted the 1993 order as requiring Respondents to pay Armstrong's continuing prescription expenses. Under these circumstances we hold that the failure to include language in the order was "a facially apparent mistake" as that term is used in Rule 39(A), Rules of the Workers' Compensation Court.[3] We therefore direct the Workers' Compensation Court to correct the 1993 order by adding to it explicit language that Respondents are to pay Armstrong's continuing prescription costs.

¶ 13 We further direct, however, that only those medications Respondents paid for during the six years following the 1993 order are covered here. Any additional medications are expressly not covered by this opinion. Armstrong would be required to establish that his condition had changed for the worse and that the change was causally related to his original on-the-job injury as a prerequisite to establishing a right to an order requir-

ing payment for additional medications. *Bill Hodges Truck*, 1989 OK 86 at § 6, 774 P.2d 1063.

¶ 14 CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS' OPINION VACATED, ORDER OF WORKERS' COMPENSATION COURT REVERSED AND MATTER REMANDED TO THE WORKERS' COMPENSATION COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

¶ 15 WATT, V.C.J., LAVENDER, KAUGER, SUMMERS, BOUDREAU, and WINCHESTER, JJ.—concur.

¶ 16 HARGRAVE, C.J.—concurs in result.

¶ 17 HODGES, J.—concurs in part, dissents in part.

¶ 18 OPALA, J.—dissents.

OPALA, J., dissenting.

¶ 1 In a remarkable feat of wizardry the court today transmogrifies a 1993 Workers' Compensation Court's dispositional clause (whose settled meaning stands confined to liability for pre-award medical treatment expenses)[1] into an **explicit judicial grant of expenses for postaward continuing healthcare maintenance.** Adding insult to injury, the court utilizes a common-law doctrine of estoppel—unavailable in the trial tribunal— to impose upon the employer a *public-law liability.*[2] I must recede from today's pronouncement.

---

3. Rule 39(A), Rules of the Workers' Compensation Court provides:

    Within twenty (20) days of the date a final order was sent to the parties the Workers' Compensation Court's power to correct it nunc pro tunc is coextensive with that of the district court. After the lapse of twenty (20) days that power is limited only to correcting facially apparent clerical errors or omissions, mathematical miscalculations, and other facially apparent mistakes in recording judicial acts.

1. The relevant text of the 1993 order's dispositional clause in contest here is:

    "THAT respondent and insurance carrier shall pay all reasonable and necessary medical expenses incurred by claimant as a result of said injury."

The language of the quoted dispositional clause has a settled meaning. Its obligatory sweep *is confined to pre-award treatment expenses. Bill Hodges Truck Co. v. Gillum,* 1989 OK 86, ¶ 7, 774 P.2d 1063, 1066.

2. The Workers' Compensation Act imposes upon employers public-law liability, which can neither be abridged nor expanded by agreement of the parties. Laws external to the body of the Workers' Compensation Act may not be invoked to create an employer's obligation for compensation, and extra-statutory doctrines will not be recognized as an available foundation for creating an employer's obligation for payment of compensation. Compensation liability is imposable *solely* by orders of the trial tribunal. See 85 O.S.1991 § 46; *Parkhill Truck Co. v. Brewer,* 1960 OK 187, ¶ 10, 354 P.2d 774, 777. Because

¶ 2 The Workers' Compensation Court is a statutory tribunal of narrow cognizance.[3] It possesses only that jurisdiction which is conferred on it by law;[4] *it may not enlarge its authority by borrowings from the common law.*[5] Today's departure from settled doctrine means that an *employer's pure, judicially uncommanded postaward largesse (by voluntarily paying for the worker's postaward prescription medication) may be later invoked to saddle it with future liability for a worker's unadjudicated postaward medical expenses. In short, the court's sua sponte invocation of "estoppel" impermissibly extends the trial tribunal's narrow range of cognizance* and **imposes on the employer an obligation not cognizable by law.**

¶ 3 The genesis of this controversy is quite simple. Claimant is the beneficiary of a permanent total disability award which directs his employer to pay "reasonable medical expenses." In the trial tribunal's critical 1993 order no mention is made of postaward expenses for health-maintenance. There is absolutely nothing in that adjudication which entitles the claimant to any postaward medical benefits he now seeks. Extant case law teaches *that absent some explicit finding in a permanent disability award* the employer is responsible **only** for pre-award medical expenses.[6]

¶ 4 *I would not hence resort today to a substantive common-law doctrine to saddle this employer with compensation liability.* I would, instead, send the claim back to the trial tribunal whence it came with directions to adjudicate claimant's plea for the expenses of his continuing postaward heath-maintenance care, subject, of course, to all those defenses the employer might press in a postremand proceeding.

the norms that govern compensation of workers for an on-the-job injury or death constitute public law, agreement between employers and employees can never attain legally binding force without the trial tribunal's approval. *Jobe v. American Legion # 7,* 2001 OK 75, ¶ 19, 32 P.3d 860, 867; *Rowland v. City of Tulsa,* 1999 OK 75, ¶ 6, 988 P.2d 1282, 1286 (Opala, J., dissenting); *Special Indem. Fund v. Reynolds,* 1948 OK 14, ¶¶ 7 and 8, 188 P.2d 841, 842; *Texas Pac. Coal & Oil Co. v. Morrison,* 1931 OK 166, 298 P. 270, syl 1.

3. The Workers' Compensation Court is a statutory tribunal of limited jurisdiction which lacks power to invoke substantive norms of the common law in aid of its narrow subject-matter judicature. *Pine v. Davis,* 1944 OK 10, ¶ 6, 145 P.2d 378, 380 (citing *Parkhill Truck Co. v. Emery,* 1933 OK 539, ¶ 4, 27 P.2d 333, 335–36; *O'Mara v. Andrews,* 1930 OK 520, ¶ 3, 293 P. 257, 257; *Wilson Drilling Co. v. Beyer,* 1929 OK 379, ¶ 18, 280 P. 846, 849). *See also Camps v. Taylor,* 1995 OK 23, ¶ 2, 892 P.2d 633, 637 (Opala, J., concurring); *Cities Service Gas Co. v. Witt,* 1972 OK 100, ¶ 14, 500 P.2d 288, 291; *Bryant–Hayward Drilling Co. v. Green,* 1961 OK 127, ¶ 7, 362 P.2d 676, 677; *Union Indemnity Co. v. Saling,* 1933 OK 481, 26 P.2d 217, 221.

4. *Cities Service Gas Company, supra* note 3, at ¶ 14, at 291; *Bryant–Hayward Drilling Company, supra* note 2, at ¶ 7, at 677; *Camps, supra* note 2, at ¶ 3, at 637 (Opala, J., concurring).

5. *McCormack v. Oklahoma Publishing Co.,* 1980 OK 98, 613 P.2d 737, 740. *See also Cities Service Gas Company, supra* note 3, at ¶ 14, at 291; *Rosamond Construction Co. v. Rosamond,* 1956 OK 13, ¶ 16, 292 P.2d 392, 395–96; *Hardy Sanitarium v. De Hart,* 1933 OK 337, 22 P.2d 379, 381.

6. *Bill Hodges Truck Co., supra* note 1, at ¶¶ 6 and 7, at 1066–67 (once an adjudication for permanent disability has been made, claimant is no longer entitled to medical treatment without a finding that explicitly authorizes postaward provision of continuing regime of maintenance health care).