2003 OK 115

**Vickie BLYTHE, Petitioner,**

v.

**The UNIVERSITY OF OKLAHOMA, Compsource Oklahoma, and The Workers' Compensation Court, Respondents.**

No. 98,371.

Supreme Court of Oklahoma.

Dec. 23, 2003.

Jack F. Tracy of Purcell, OK, for Petitioner/Claimant.

M. Thad Groom and Tava S. Jones of Groom & Hammond, P.C., of Oklahoma City, OK, for Respondent/Employer.

LAVENDER, J.

¶ 1 The issue in the present cause is whether the collateral source rule applies in the context of a workers' compensation claim for prescription expense reimbursement. If applicable, the collateral source rule ensures that the injured employee's recovery is not diminished by benefits, saving or insurance of the injured employee. We hold that the collateral source rule, to the extent it is codified in the Workers' Compensation Act at 85 O.S.2001 § 45(A.), applies in this case and the COCA erred in sustaining the WCC's refusal to apply that rule and/or the terms of that statute in the instant case.

I

**FACTS AND PROCEDURAL HISTORY**[1]

¶ 2 Claimant initiated her workers' compensation action in July, 1994 alleging

she suffered a work-related injury during her employment with the University of Oklahoma. Claimant alleged primarily neck injury and consequential psychological overlay injury arising from lifting, bending and straining. In June, 1999, the WCC awarded PTD benefits and further ordered Employer to provide Claimant with reasonable and necessary continuing medical maintenance "limited to medications needed to maintain the [C]laimant's physical and psychological state, to be provided under the care of Dr. Ed Ellis (including examinations to provide same)." This order was affirmed by a three-judge panel of the WCC. Employer appealed and the COCA affirmed the PTD award and order regarding continuing medical maintenance limited to medications necessary to maintain Claimant's *physical* injury, but reversed the trial court's determination regarding Claimant's alleged *psychological* injury. In accordance with its determination that competent medical evidence did not support a finding that Claimant suffered a psychological injury, the COCA modified the trial court's order by eliminating Claimant's award for continuing medical maintenance related to her psychological conditions.[2]

¶3 In January, 2000, Claimant filed her Form 19 in the Workers' Compensation Court, seeking reimbursement for the cost of prescription medications. Employer challenged Claimant's recovery of the cost of prescriptions on three bases: (1) Claimant sought reimbursement for cost of prescriptions unrelated to her work-related injury; (2) the reasonableness and necessity for the numerous quantities of prescription medications being obtained by Claimant; and (3) Claimant sought reimbursement for cost of prescriptions not personally paid out of her own pocket, but actually paid on Claimant's behalf by her health insurance carrier. Pursuant to Employer's objections, the WCC entered an Order for an Independent Medical Opinion on reasonable and necessary prescriptions. The record reflects that ultimately, the parties stipulated to a detailed itemization of related, reasonable and necessary prescription medications, which included stipulated amounts of Claimant's out-of-pocket expenses in the amount of $19,882.42 as well as the total amount of prescription medication expenses (Claimant's actual out-of-pocket cost plus the cost actually paid by

1.  Claimant Vickie Blythe also filed a common law tort action in the District Court of Pushmataha County against the State Insurance Fund (now known as Compsource Oklahoma) in August, 2000 alleging the Insurance Fund's bad faith failure to reimburse her for prescription costs. That case was dismissed pursuant to *Fehring v. State Ins. Fund*, 2001 OK 11, 19 P.3d 276 (holding the State Insurance Fund is a state entity entitled to immunity from suit for bad faith failure to timely pay a workers' compensation award pursuant to the Governmental Tort Claims Act). For reasons unclear from the record before us, Claimant apparently refrained from appealing the dismissal of her district court case. Instead, for the first time on appeal in this workers' compensation action, Claimant seeks collateral redress concerning the dismissal of her tort claim in district court and demands reversal of *Fehring* in this case. The COCA correctly determined that the district court case is not appealed here and the issue of bad faith was never addressed by the WCC below. We note that even if Claimant had pressed her common law tort claim before the Workers' Compensation Court in this matter, we would still decline consideration of Claimant's tort claim against Employer. The Workers' Compensation Court is a "statutory

tribunal of limited jurisdiction" as ascertained by reference to the Workers' Compensation Act and "limited to the purposes of the Act." *Hefley v. Neely Ins. Agency, Inc.*, 1998 OK 12, ¶7, 954 P.2d 135, 137; *Pine v. Davis*, 1944 OK 10, 145 P.2d 378, 380. Further, the Workers' Compensation Court "lacks the power possessed by the courts of general jurisdiction to decide tort and general contract matters" and "the [COCA] sitting in review of that tribunal's decision similarly lacks the authority to decide those issues." *Hefley*, 1998 OK 12 at ¶11, 954 P.2d at 138. We are similarly bound by the limitations of jurisdiction in this workers' compensation matter, and we therefore decline to determine Claimant's common law tort claims.

2.  The COCA modified paragraph 10 of the trial court's order by striking the words "and psychological" such that the order as modified reads as follows:

    That the Claimant's demand for reasonable and necessary continuing medical is GRANTED by the Court limited to medications needed to maintain the claimant's physical state, to be provided under the care of Dr. Ed Ellis (including examinations to provide same) until further order of the Court.

Claimant's health insurance carrier) in the amount of $46,344.24.

¶ 4 The record illuminates little detail regarding Claimant's health care coverage other than the fact that the third-party payor, Blue Cross and Blue Shield health insurance carrier, was a "group health policy" provided to Claimant by Employer as a part of a disability/compensation package as an employee at the University of Oklahoma. Claimant alleges (and Employer does not dispute) that she personally paid at least a portion of premiums[3] for her own health insurance with Blue Cross. Unfortunately, we are prevented from verifying specifics concerning the subject insurance coverage because neither the policy, nor the terms thereof were included in the record.

¶ 5 Claimant argued her entitlement to reimbursement for the total amount of $46,344.24 for prescription expenses pursuant to application of the collateral source rule

and 85 O.S. § 45[4], which provides in pertinent part as follows:

A. No benefits, saving or insurance of the injured employee, independent of the provisions of this act shall be considered in determining the compensation or benefit to be paid under this act.

*Id.* (footnote omitted). Employer argued that 85 O.S. § 45 had no application in this case because there is no statutory authority for prescription reimbursement.[5]

¶ 6 The WCC entered a "Miscellaneous Order" on September 25, 2002, wherein the WCC specifically rejected Claimant's demand for application of the collateral source rule to this case and limited reimbursement to $19,882.42 for Claimant's actual out-of-pocket prescription expenses and denied recovery for the additional amount expended for prescriptions on her behalf by her health insur-

---

3. Employee attempts to distinguish the Employer's contribution from that of its insurance carrier CompSource Oklahoma [formerly known as and persistently referred to by Employee as the State Insurance Fund] regarding the procurement of the subject health insurance coverage. Initially, Employee alleges on page 1 of her brief-in-chief that "the **parties agree** that Mrs. Blythe has her own [health] insurance coverage" and it "is **not disputed**" that she paid "**all** the premiums" and "respondent made **no** contributions to this insurance"), but later acknowledges on page 4 that "[a]s part of her compensation package, she is insured by Blue Cross Blue Shield. The insurance premiums for the medical insurance are paid solely by Vickie Blythe and/or the [employer] University of Oklahoma. The State Insurance Fund has not paid any part of the premiums and is not a party to the insurance contract between Vickie Blythe and Blue Cross." In its response brief, the Employer makes no attempt to clarify or dispute these facts concerning the health insurance coverage and/or payment of premiums therefor. Instead, Employer merely refers to the health insurance carrier as a "Third Party who did pay" and/or "her health insurance carrier." These characterizations may constitute a direct admission by Employer that it did not *solely* provide the health insurance benefit and possibly may also constitute Employer's indirect admission concerning Employee's payment of premiums. However, aside from Employee's unchallenged assertions in the brief and/or at the hearing before the Workers' Compensation Court, there is no objective evidence in the record supportive of Employee's assertion that it is undisputed that she paid a portion of the premium for her health insurance.

4. 85 O.S. § 45 was amended in 1994 to add a substantive provision, which was ultimately labeled part (B.), and the longstanding provision at issue in this case was thereupon labeled part (A.). Part (B.) is inapplicable in this case. The parties and the lower courts have referred generally to § 45, but we refer more precisely to § 45(A.), which is the express provision applicable on the facts of this case.

5. Although Employer argues there is no statutory authority for an employee's reimbursement for prescription expenses, 85 O.S. § 14(A.)(1.) expressly provides "[t]he employer shall promptly provide for an injured employee such medical, surgical or other attendance or treatment ... medicine ... as may be necessary after the injury." *Id.* Case law further provides that medical treatment pursuant to § 14 is a benefit and "a requirement other and in addition to the schedule of compensation." *Depue v. Barsh Truck Lines*, 1972 OK 5, 493 P.2d 80, 83. Where an employer is under an express statutory duty to provide the injured employee with medical treatment including but not limited to medicine, Oklahoma case law has construed this statutory authority to impliedly permit employees' reimbursement for their related, reasonable and necessary medical expenses. *See generally Depue*, 493 P.2d at 82–82; *Jobe v. American Legion*, 2001 OK 75, 32 P.3d 860; *Armstrong v. Unit Drilling*, 2002 OK 17, 43 P.3d 383; *Campbell v. Hunt JB Transport Services*, 2002 OK CIV APP 33, ¶ 7, 43 P.3d 421, 423 (providing "[a] goal of the Workers' Compensation Act is to insure that medical expenses of an employee who has suffered an on-the-job injury will be paid.")

ance carrier. Claimant appealed and the COCA sustained.

## II

## THE COLLATERAL SOURCE RULE, AS CODIFIED IN 85 O.S.2001 § 45(A.), APPLIES IN THIS WORKERS COMPENSATION ACTION

### A. The collateral source rule and 85 O.S. 2001 § 45(A.) compared

¶ 7 The collateral source rule traditionally applies in the context of common law tort actions to determine the amount of compensatory damages "which will compensate [the injured party] for all detriment proximately caused." *See* 23 O.S.2001 § 61[6]; *Denco Bus Lines, Inc. v. Hargis,* 1951 OK 11, 229 P.2d 560, 564. The general rule applied to determine the proper amount which will compensate for the injured party's "whole loss" in a common law tort action is as follows: "total or partial compensation for an injury received by the injured party from a collateral source wholly independent of the wrongdoer will not operate to lessen the damages recoverable from the person causing the injury." *Id.* at 564 (quoting 15 AM. JUR. *Damages* § 198). Further,

[i]t is well settled that damages recoverable for a wrong are *not diminished* by the fact that the party injured has been wholly or partly idemnified [sic] for his loss by insurance effected by him and to the procurement of which the wrongdoer did not contribute.... The same has been held true of compensation received by an employee from a benefit fund maintained by the employer.

*Id.* (quoting 15 AM. JUR. *Damages* § 201)(emphasis added). Pursuant to these authorities, in *Hargis,* this Court determined that "[u]nder the [damages] statute the receipt of compensation by the injured party from a collateral source wholly independent of the wrongdoer would not operate to lessen the damages recoverable from the person causing the injury."[7] *Id.*

¶ 8 85 O.S. § 45 has been the law since its enactment in 1915.[8] The language of that statute is clear and unambiguous on its face.[9] Case law generated since that time indicates that this statute has been construed consistently with its plain meaning [10], and this Court has accordingly refused to consider "benefits, saving or insurance of the injured employee, independent of [the Workers' Compensation Act] ... in determining the compensation or benefit to be paid under this act." 85 O.S. § 45(A.). While this section of The Workers' Compensation Act has

---

**6.** 23 O.S.2001 § 61. **Obligation not arising from contract**

For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not. *Id.* (footnote omitted).

**7.** An injured party's health insurance is a collateral source, the benefits of which may not be reduced from a damages award in a tort action. *See Handy v. City of Lawton,* 1992 OK 111, 835 P.2d 870, 874; *Robinson v. Borg-Warner Protective Services Corp.,* 2001 OK 59, ¶ 16, 31 P.3d 1041, 1045.

**8.** Although the statute has been re-numbered and has undergone recent amendment with the addition of subsection (B.) thereto, the substantive language of the original act (now 85 O.S.2001 § 45(A.)) has remained virtually unchanged since its 1915 enactment. Rev. Laws Okla. Ann. Supp., Ch. 42-A, Art. III, § 3782w. (1915) provided as follows: "**Benefits or savings not con-**

sidered. No benefits, savings or insurance of the injured employee, independent of the provisions of this Act shall be considered in determining the compensation or benefit to be paid under this Act." *Id.*

**9.** Where a statute's language is plain and unambiguous, no room exists for construction of its language. *Oldham v. Drummond Bd. of Ed.,* 1975 OK 147, 542 P.2d 1309, 1311.

**10.** "[T]he plain meaning of a statute's language is conclusive except in the rare case when literal construction produces a result demonstrably at odds with legislative intent." *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 13, 33 P.3d 302, 307; *City of Tulsa v. Public Employees Relations Bd.,* 1998 OK 92, ¶ 14, 967 P.2d 1214, 1220. Courts have "the duty ... to give effect to legislative acts, not to amend, repeal or circumvent them." *Public Employees Relations Bd.,* 1998 OK 92, ¶ 18, 967 P.2d at 1221 (citation omitted). Further, this Court has no authority to re-write legislation merely because the legislation does not somehow comport with our conception of prudent public policy. *See id.*

never been expressly labeled "the collateral source rule," the meaning and application of the statutory provision clearly mirrors that common law damages rule in the context of workers' compensation awards and/or benefits. Whether § 45(A.) is literally derived from the common law collateral source rule or not, the application of both the rule and the statute is the same albeit applied in different tribunals operating under distinct compensation schemes. Under both the collateral source rule and under the terms of the Workers' Compensation statutory provision, compensation is determined without any reduction for the amount of any benefits the injured party received from his or her health insurance carrier. Stated another way, under both the collateral source rule and statutory scheme, no credit or set-off is given to the liable party for the amounts previously paid by the injured party's health insurance carrier. Despite the lower courts' refusal to do so, we recognize that we are constrained to apply the terms of the statute. The collateral source rule, to the extent it is codified in 85 O.S. § 45(A.), is applicable to Claimant's claim for prescription reimbursement in this workers' compensation action.

**B. Extant Oklahoma workers' compensation case law foreshadows today's pronouncement.**

¶ 9 While the parties characterize this matter as a case of first impression, Oklahoma workers' compensation jurisprudence has foreshadowed the result in this case. In the workers' compensation case of *Tidewater Associated Oil Co. v. Ale*, 1942 OK 373, 130 P.2d 991, this Court held, pursuant to 85 O.S. § 45, employer there was *not entitled to a credit* for payments previously made to employee from an insurance policy procured by "joint efforts" of the employer and employee. In *Tidewater*, the Court noted the employee "paid a portion of the premiums." *Id.* at 993 (emphasis added). The precise nature and purpose of the insurance benefits at issue in *Tidewater* are unclear, but appear to have been either in the nature of health and/or disability benefits. Clearly, the *Tidewater* Court construed the meaning of the statute's prohibition against "consideration" of the injured employee's insurance, as a prohibition

against crediting the Employer with that insurance benefit amount when determining the worker's compensation award or benefits to be paid pursuant to the Workers' Compensation Act.

¶ 10 More recently, this Court approved for publication the COCA opinion of *Bill Hodges Truck Co. v. Humphrey*, 1984 OK CIV APP 55, 704 P.2d 94. In *Humphrey*, the COCA determined the workers' compensation carrier was not entitled to a set-off against the workers' compensation award for the amount the employee recovered under the employee's uninsured motorist insurance coverage. In reaching this conclusion, the COCA analogized uninsured motorist coverage with medical insurance, which are "contractual vehicle[s]," whereby "the working person may protect himself against the vagaries of life. The rights under this coverage are bargained and paid for by the worker and belong to him. Uninsured motorist coverage is 'insurance of the injured employee' to which the compensation carrier has no right." *Id.* at 96 (citation omitted). In *Humphrey*, the COCA cited with express agreement the Arkansas Supreme Court's "astute comments," which are provided in pertinent part as follows:

[The compensation carrier] has no right to expect an employee to supplement his common law remedies and the compensation carrier's statutory lien, by purchasing his own insurance. If the employee does choose to expend his own funds to provide additional protection for himself ... by paying for an accident and health policy ... the compensation carrier does not thereby acquire additional rights. It does not become a third-party beneficiary of the employee's insurance contract.

*Humphrey*, 704 P.2d at 96 (quoting *Travelers Ins. Co. v. National Farmers U. Prop. & Cas. Co.*, 252 Ark. 624, 480 S.W.2d 585, 589 (1972)). Just as the *Humphrey* court concluded the workers' compensation carrier has "no right" to a credit for the employee's uninsured motorist benefits, the workers' compensation carrier in this case should be similarly precluded from enjoying a credit for the Claimant's health insurance benefits.

¶ 11 It follows from the plain meaning of 85 O.S. § 45(A.) and the cases construing that statute that just as recoverable damages in a common law tort action "are not diminished" by the amount of indemnification by the injured party's insurance, recoverable workers' compensation benefits and/or awards are likewise not diminished by amount enured to the injured employee via his or her health insurance. Contrary to the plain meaning of 85 O.S. § 45(A.), the COCA considered Claimant's health insurance amount in determining the amount of prescription expenses to be reimbursed. In essence, the COCA permitted the Employer to credit or set-off the amount paid on Claimant's behalf by her health insurance carrier, thus refusing to apply the statute and/or

collateral source rule in the context of a workers' compensation case.[11] In doing so, the COCA erroneously ignored and/or misconstrued the aforementioned Oklahoma workers' compensation statutory and case law and instead, based its determination primarily upon the authority of one Rhode Island Supreme Court case.[12] However, Rhode Island law is not controlling here.[13]

## C. Extension of *Handy v. City of Lawton* fringe benefit analysis in the context of workers' compensation.

¶ 12 Claimant asserts she personally paid a portion of premiums for her health insurance coverage, which was provided as a part of Claimant's benefits package with Em-

---

**11.** The COCA interpreted § 45 "to mean simply that an employee may recover under both the workers' compensation act and his or her own insurance policy." The COCA has no explanation for why, contrary to the express statutory prohibition against consideration of the employee's insurance, the COCA did just that in determining Claimant was not entitled to reimbursement of those prescription expenses incurred by her health insurance carrier.

**12.** *Moniz v. Providence Chain Co.*, 618 A.2d 1270 (R.I.1993)(holding the workers' compensation claimant may not rely on the collateral source rule to obtain personal reimbursement for medical expenses incurred by claimant's private medical insurer). The Rhode Island Supreme Court in *Moniz* reached its determination primarily by distinguishing between damages recoverable in a common law tort action and workers' compensation benefit/award payments. Further, the *Moniz* court reasoned that application of the collateral source rule in a workers' compensation case would result in a windfall to the employee, "would weaken the policies underlying the Workers' Compensation Act and arrive at an inequitable result." *Id.* at 1272. We disagree with the reasoning in *Moniz*, insomuch as it is premised upon a distinction without a difference. While it is true that injured employees are not entitled to recover "damages" in a workers' compensation action, the *compensatory purpose* behind both schemes is identical. Notably absent from the *Moniz* analysis is any reference to a statutory provision similar to 85 O.S. § 45(A.), the application of which demands a different result in this Oklahoma workers' compensation case.

**13.** While the COCA cited only one Rhode Island case in support of its determination that the collateral source rule is inapplicable in Oklahoma workers' compensation actions, more re-

cent and more analogous case law outside our jurisdiction supportive of the contrary position exists. *See Farmer–Cummings v. Personnel Pool*, 110 S.W.3d 818 (Mo.2003)(holding workers' compensation claimant is entitled to compensation for past medical expenses actually paid by third-party insurers). One critical distinguishing feature of the Missouri Supreme Court case of *Farmer–Cummings* is the application of the Missouri statute, MO. ANN. STAT. § 287.270, which provides in pertinent part as follows: "No savings or insurance of the injured employee, nor any benefits derived from any other source than the employer or the employer's insurer for liability under this chapter, shall be considered in determining the compensation due hereunder ..." *Id.* The *Farmer–Cummings* court reasoned

> [t]his [statutory] section clearly was intended to allow the employee to benefit from any collateral source the employee might have available to him or her, independent of the employer, whether purchased or not. If the employer has not provided such a source, the employer has no right under the statute to claim benefit from it. 'Payments from ... any source *other than the employer or the employer's insurer for liability* for Workmen's Compensation are not to be credited on Workmen's Compensation benefits.'

*Id.* At 822 (quoting *Shaffer v. St. John's Reg'l Health Ctr.*, 943 S.W.2d 803, 807 (Mo.App.1997)) (emphasis added). *Farmer–Cummings* is more instructive and far more analogous to this case than *Moniz* considering the striking similarity of the Missouri statute in *Farmer–Cummings* to ours at 85 O.S. § 45(A.). Just as the *Farmer–Cummings* case construed the plain language of the Missouri workers' compensation statute as a codification of the collateral source rule, so too should we construe our statute and render an analogous determination in this case.

ployer University of Oklahoma.[14] In our view, Claimant is entitled to reimbursement for the amount paid on her behalf by her insurance carrier regardless of Claimant's payment of premiums for such coverage because such coverage was a fringe benefit of her employment for which Employer has no right to set-off. Generally, this Court has held in a tort action that an employer is not entitled to a set-off for an amount attributable to a fringe benefit received by the employee. *Handy v. City of Lawton*, 1992 OK 111, 835 P.2d 870; *Folkestad v. Burlington Northern, Inc.*, 813 F.2d 1377 (9th Cir.1987). Although these cases are not workers' compensation cases, they are common law tort actions brought by employees against their employers and they address the issue of whether the employer is entitled to offset liability for health insurance benefits recovered by the employee. *Handy* provides "that the courts were unanimous that the determining factor was the purpose and nature of the fund, and not merely the source." *Handy*, 835 P.2d at 874. These cases further provide "[i]f the fund is for general hospital and medical coverage upon which the insured may make a claim without regard to liability on the part of the employer, the policy is a fringe benefit, and is part of the employee's income. The collateral source rule prohibits a set-off of benefits received thereunder by the employee." *Handy*, 835 P.2d at 874–75 (citing *Folkestad*, 813 F.2d at 1381).

¶ 13 The rule enunciated in *Handy* and *Folkestad* falls squarely in line with the older workers' compensation case of *Tidewater Associated Oil Co. v. Ale*, 1942 OK 373, 130 P.2d 991, which likewise prohibited the em-ployer's set-off of the employee's insurance benefit in the context of determination of a workers' compensation award. Further, pursuant to the test set forth in *Handy* and *Folkestad*, the nature and purpose of the fund at issue in this case, Claimant's health insurance benefit, was in the nature and purpose of health insurance coverage, which employees such as Claimant are entitled to make claims thereto without regard to Employer's liability. Clearly, Claimant's health insurance constitutes a fringe benefit of Claimant's employment to which Employer is not entitled to a set-off. Claimant is therefore entitled to recovery of $26,461.82, which represents the amount Claimant's health insurance carrier paid on Claimant's behalf for prescriptions,[15] in addition to $19,882.42, which is the amount the WCC previously ordered to be reimbursed for Claimant's personal prescription expenses.

### III

### SUMMARY

¶ 14 In sum, we hold that the collateral source rule, as codified in the Workers' Compensation Act at 85 O.S. § 45(A.), applies in this case and the COCA erred in sustaining the WCC's refusal to apply the rule and/or terms of § 45(A.) in this case. Claimant is entitled to recover her related, reasonable and necessary personal out-of-pocket expenses for prescriptions in the amount of $19,882.42, as was awarded by the WCC below. Further, Claimant is also entitled to recover related, reasonable and necessary prescription expenses in the amount of $26,461.82, which was the amount expended

---

**14.** Claimant's brief-in-chief contains an acknowledgment that "[t]he insurance premiums for the medical insurance are paid solely by Vickie Blythe and/or the [employer] University of Oklahoma. The State Insurance Fund has not paid any part of the premiums and is not a party to the insurance contract between Vickie Blythe and Blue Cross." To the extent that Claimant concedes the Employer, University of Oklahoma paid at least a portion of the premiums for Claimant's health insurance coverage, such an "admission[ ]" in an appellate brief [is] acceptable as material supplementing the record." *Deffenbaugh v. Hudson*, 1990 OK 37, 791 P.2d 84, 86, n. 3 (citation omitted).

**15.** The WCC's order is vacated in part because of its erroneous refusal to apply the collateral source rule and/or 85 O.S. § 45(A.). However, we do not disturb the WCC's order directing Employer to reimburse Claimant $19,882.42 for her personal prescription expenses. Upon remand, the WCC shall enter an order directing Employer to reimburse Claimant $26,461.82 in addition to the $19,882.42 the WCC previously awarded Claimant for reimbursement of her personal prescription expenses. The total reimbursement amount due Claimant is the sum of her personal prescription expenses in the amount of $19,882.42 plus her health carrier prescription cost of $26,461.82, for the total reimbursement amount of $46,344.24.

on Claimant's behalf by her health insurance carrier. Both the WCC and the COCA erred in allowing Employer a credit or set-off in this workers' compensation action for the amount expended by Claimant's health insurance carrier for the cost of related, reasonable and necessary prescription medications. Pursuant to 85 O.S.2001 § 45(A.), Claimant is entitled to total reimbursement for prescription expenses in the amount of $46,344.24.

¶ 15 Upon certiorari previously granted,

THE COURT OF CIVIL APPEALS' OPINION IS VACATED; THE WORKERS' COMPENSATION COURT ORDER IS VACATED IN PART; AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH TODAY'S PRONOUNCEMENT.

¶ 16 OPALA, V.C.J., HODGES, LAVENDER, KAUGER and BOUDREAU, JJ., concur.

¶ 17 SUMMMERS, J., concurs in part; dissents in part.

¶ 18 WATT, C.J., HARGRAVE and WINCHESTER, JJ., dissent.

WATT, C.J., dissenting:

### DISSENTING OPINION

¶ 1 The majority's holding that 85 O.S.2001 § 45 codifies the collateral source rule is misguided. The collateral source rule is a rule of tort law that prohibits a tortfeasor from reducing its liability based on benefits the injured party has received from insurance to which the tortfeasor was a stranger, despite the fact that doing so allows the injured party to enjoy a double recovery. Workers' compensation, though, calls for the employer to pay compensation *"without regard to fault."* 85 O.S.2001 § 11.

¶ 2 It is understandable that the law prohibits those whose wrongdoing make them liable to those they have negligently injured from reducing their liability in the amount of insurance paid to the injured party, although doing so results in a double recovery for the injured party. But there is no reasonable basis for imposing the same burden on those

who are made liable under the Workers' Compensation Act, *"without regard to fault."*

¶ 3 In none of the opinions the majority relies on to support its conclusion that § 45 means that workers' compensation employers may be burdened with a double recovery, was a double recovery involved. Thus, the question whether § 45 codifies the collateral source rule was not presented.

¶ 4 In *Tidewater Associated Oil Co. v. Ale*, 1942 OK 373, 130 P.2d 991, the injured worker suffered a "paralytic condition" as the result of a cerebral hemorrhage, which was aggravated by the worker's on the job injury, and which resulted in permanent injury. The Court noted that there were other payments made to the worker because of his disability, but there is no indication in the opinion that these other payments resulted in a double recovery. Thus, the Court's holding that § 45 allowed the worker to recover benefits from both sources does not stand for the proposition that § 45 "codifies" the collateral source rule.

¶ 5 Similarly, in *Bill Hodges Truck Co., Inc. v. Humphrey*, 1984 OK CIV APP 55, 704 P.2d 94, (approved for publication by the Supreme Court) the injured worker received both workers' compensation benefits for permanent disability and a $12,000 payment from his uninsured motorist carrier. Section 45 was held to allow the injured worker to retain both benefits. As in *Tidewater*, there is no indication in *Humphrey* that the court's action in allowing the worker to retain the $12,000 resulted in a double recovery so the collateral source issue was not presented there, either.

¶ 6 The other opinions cited by the majority were *tort* cases, which are inapposite here for the reasons stated above. Here, in contrast to the cases relied on by the majority, an employer who is liable without regard to fault is being required to provide the claimant a windfall by paying to her tens of thousands of dollars for medicines that her insurer has admittedly already paid for. Title 85 O.S.2001 § 14 requires that the employer "shall promptly provide for an injured employee such ... medicine ... as may be necessary after the injury." It does not pro-

vide that the injured employee shall receive payment for such medicine twice.

¶ 7 The Supreme Court of Rhode Island was presented with this precise question in *Moniz v. Providence Chain Company*, 618 A.2d 1270, 1271 (R.I.1993). There, the court, after observing the differences between tort liability and that created under workers' compensation law, rejected the notion that the employer should have to pay the worker for medicines that the worker's insurance had already paid for. The court so held in order "to prevent an employee from reaping a financial bonanza from workers' compensation." Here, though, the majority has sanctioned just such a "financial bonanza."

¶ 8 There is nothing in Oklahoma law to support the majority's notion that § 45 codifies the collateral source rule. In fact, a fair analysis requires the opposite conclusion.

¶ 9 I respectfully dissent.