SHANNON v. BRIDGES.

No. 32024. Feb. 12, 1946.

165 P. 2d 976.

Ownby & Warren, of Tulsa, for plaintiff in error.

Hughey Baker, of Tulsa, for defendant in error.

CORN, J. Plaintiff sued L. D. Shannon, doing business as Shannon Feed Company, for $1,400 damages alleged to have resulted from the breach of an oral warranty of fitness, growing out of plaintiff's purchase of commercial fertilizer from the defendant.

The pleadings and evidence reflect that in the spring of 1942 defendant made tests of soil from plaintiff's farm, upon being advised as to what crops were to be grown, and advised the plaintiff there was need of fertilizer containing 5% nitrogen, 7% potash and 12% phosphate. Thereafter defendant purported to prepare 1,300 pounds of a fertilizer based upon this formula, for plaintiff's use upon his land in growing watermelons and tomatoes, upon the defendant's recommendations that this was indicated for plaintiff's needs.

Plaintiff used this fertilizer in attempting to produce his crops, but alleged that the crops upon the land so fertilized failed and did not produce, whereas had the fertilizer been as warranted he could have produced crops of a value of $1,400 more than those act-

ually produced upon the land where defendant's fertilizer was used.

Defendant's demurrer to the petition was overruled and it filed an answer in the form of a general denial. Upon the issues so joined trial was had to a jury and plaintiff recovered judgment in the amount of $1,000, from which judgment defendant has appealed.

The evidence showed that plaintiff took soil specimens to defendant for analysis, and relied upon defendant's recommendations that a fertilizer referred to as 5-7-12 (i.e.) 5% nitrogen, 7% potash and 12% phosphate was particularly indicated for growing the crops specified, and that the fertilizer made up for plaintiff contained these chemical elements in the amounts stated. Relying upon these representations, plaintiff bought and used this fertilizer on the land where the tomatoes and watermelons were planted.

The fertilizer was used on a nine-acre tract planted to watermelons, and one and one-half acres planted to tomatoes. On an adjoining nine-acre tract planted to the same kind of melons, plaintiff used his customary brand of fertilizer, as was also done on a half acre of tomatoes of the same variety as the tomatoes planted on the one and one-half acres where the defendant's fertilizer was used. On the nine-acre tract whereon plaintiff used his customary fertilizer he produced watermelons for which he received $882.35; on the adjoining nine-acre tract where defendant's fertilizer was used, melons worth $112 were produced. On the half-acre tract where plaintiff used his customary fertilizer he produced tomatoes worth $242.35, while on the one and one-half acre-tract fertilized with defendant's product tomatoes worth $262.80 were produced, providing the basis for plaintiff's claim that, had the fertilizer been as warranted, he would have produced tomatoes worth $726.05 on the one and one-half acre tract.

The evidence further showed that plaintiff planted his crop and worked it diligently, that the crop fertilized with defendant's product had a poor appearance and was late in maturing; plaintiff notified defendant of these facts, and later had an analysis made of the fertilizer by the State Department of Agriculture, this test revealing that defendant's fertilizer contained the chemical elements of .74% nitrogen, 5.10% potash and 10.60% phosphate, instead of the 5-7-12 as recommended by defendant and warranted to be contained in the fertilizer sold plaintiff.

Defendant's five assignments of error are presented under one proposition, in urging that this judgment should be reversed. The argument in behalf of the errors assigned as grounds for reversal is presented by the single proposition that the measure of damages for breach of warranty is the difference between the value of the crops grown and that which would have been produced if the fertilizer sold had been as warranted, less the cost of harvesting and transporting and marketing the crop plaintiff contended would have been harvested.

Supporting defendant's argument are numerous cases from this court holding that to recover for loss or damage to crops the plaintiff must prove the probable yield, as well as the probable cost of harvesting, transporting, and marketing such crops, the resulting damages being represented by the difference between the probable value of the crop, less these costs. Bowles v. Brown, 187 Okla. 264, 102 P. 2d 837; City of Okmulgee v. Wall, 193 Okla. 333, 144 P. 2d 103; Shell Oil Co. v. Tate, 194 Okla. 23, 147 P. 2d 445.

The term "damages" in a legal sense is defined as meaning the compensation awarded in law for the injury done, 25 C. J. S. § 1.

To determine the measure of damages for loss of crops it is necessary to consider numerous factors, among which are the expenses that would have been incurred in harvesting and transporting the crops to market. 25 C. J. S. § 85.

Nowhere in the record before us is there evidence concerning the cost of harvesting, transporting, and marketing the crops in question. The only evidence in the record is concerned with the total value of crops that would have been produced had defendant's fertilizer been as warranted.

Evidence concerning the market value of the crops not grown is not sufficient upon which to base an award for damages sustained, in the absence of additional evidence establishing the expense of harvesting and marketing such crops.

Although the plaintiff's evidence showed a breach of warranty and an injury resulting therefrom, there was a total failure to establish the items of expense which plaintiff would have had in handling the crops, and these expenses were necessary items which had to be established by competent evidence before the measure of damage suffered by breach of defendant's warranty could be ascertained.

In City of Okmulgee v. Wall, 193 Okla. 333, 144 P. 2d 103, we said:

". . . and, in order to establish detriment caused by city's leaking water pipe under claim of loss of crops, it was necessary for plaintiff to show probable yield under proper cultivation and value of probable yield when matured, gathered, prepared and ready for sale, and probable cost of cultivation, gathering, preparing and transporting such crops to market."

To the same effect see Bowles v. Brown, supra; Shell Oil Co. v. Tate, supra; H. F. Wilcox Oil and Gas Co. v. Murphy, 186 Okla. 188, 97 P. 2d 84; Gripe v. Hatmaker, 189 Okla. 317, 116 P. 2d 973, 126 A. L. R. 123.

In view of the record we are of the opinion the trial court erred in overruling defendant's demurrer to plaintiff's evidence. For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

GIBSON, C.J., HURST, V.C.J., and RILEY, OSBORN, BAYLESS, WELCH, and ARNOLD, JJ., concur.