June HANNAH, Appellant,

v.

Bill HASKINS, d/b/a Cloverleaf Fertilizer Company and Dwayne Elvin Bentley, Appellees.

Kirk National Leasing Co., Inc.

No. 79–1326.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 6, 1979.

Decided Jan. 4, 1980.

Rehearing Denied Jan. 23, 1980.

Joseph F. Devereux, Jr., Devereux & Devereux, St. Louis, Mo., for appellant.

Joseph M. Kortenhof and Brent W. Baldwin, St. Louis, Mo., for appellees.

Before GIBSON, Chief Judge, and STEPHENSON and HENLEY, Circuit Judges.

GIBSON, Chief Judge.

June Hannah appeals from a jury verdict in this diversity case tried in the United States District Court for the Eastern District of Missouri,[1] which found the defendants, Bill Haskins and one of his truckdrivers, Dwayne Bentley, not negligent in an automobile accident involving Haskins' leased truck and Hannah's son's car. On appeal, Hannah contends that the trial court erred in admitting into evidence testimony relating to payments received by her from a collateral source and that the court also erred in failing to grant a judgment notwithstanding the verdict in her favor or, in the alternative, a new trial. We affirm the District Court.

This case arises out of a vehicle collision which occurred on March 16, 1976, at 11:00 p. m. in the westbound, right-hand lane of the Interstate 55/70 bridge over the Mississippi River on the Missouri side near St. Louis. Hannah was a passenger in the car, operated by her son, when the vehicle stalled on the bridge. Raul Rivera, a good samaritan, pulled over in front of the Hannah vehicle and began assisting the Hannahs by flagging traffic at a point approximately twenty-five feet behind the stalled car, which was located just over the ridge of the bridge. While Hannah's son worked on the engine under the hood, Hannah went behind the steering wheel of the car in an attempt to start it. In the meantime, Rivera sighted Haskins' truck at a point thirty to thirty-five feet from him. He estimated its speed to be forty to forty-five miles per hour on the interstate highway bridge. As soon as Bentley, the truckdriver, saw Rivera, he cut the wheels hard to the left and applied the brakes, but still collided with the left portion of the Hannah car. Rivera testified at trial that both the lights and emergency flashers were operating on Hannah's car. Haskins' attorney produced a statement made by Rivera to Haskins' insurance investigator in which Rivera stated that Hannah's car had no lights at the time Rivera came upon it and that he had not been able to see the Hannah car until he was "right on top of it." Bentley, the truckdriver, testified that the spacing of the bridge street-lights and the position of Rivera and the car resulted in his "coming from daylight into dark" when he was approaching the stalled·car, and he "never did see any lights."

As a result of the collision, Hannah claims she has suffered substantial injury. Although Hannah was able to walk around at the scene of the accident after the collision, she was taken to a hospital in East St. Louis where she remained overnight for observation and X-rays. After discharging herself the next morning, Hannah visited a chiropractor and then, two or three days later, a Dr. Hilliard. Subsequent to a hospital examination, Dr. Hilliard advised her to see her own physician, Dr. Ganesh, in Michi-

1. The Honorable H. Kenneth Wangelin, United States District Judge, Eastern District of Missouri.

gan. Hannah had visited St. Louis while on a medical leave of absence from her job in Michigan where she was a teacher's aide. Upon her return to Michigan, Hannah did not resume her employment. She did visit Dr. Ganesh, who treated her at his office five to six times a week during the next two years for permanent cervical and lumbosacral sprain, at an expense of over eight thousand dollars.

At trial, Haskins presented Dr. Thiele, a Board-certified graduate of St. Louis University Medical School, who testified that his examination of Hannah one week prior to trial revealed no objective evidence of injury. He further stated that even if a strain of the back or neck had occurred at the time of the accident, the injury should have lasted no longer than two to six weeks. Neither Dr. Hilliard nor Dr. Ganesh testified in person at the trial.[2]

In this appeal Hannah contends that the trial court erred in admitting into evidence testimony relating to payments received by her from a collateral source. Prior to trial, Hannah's attorney filed a motion in limine to exclude all testimony relating to compensation received by Hannah from collateral sources, primarily Blue Cross, Blue Shield and Medicaid. The trial court granted the motion. At trial, however, Hannah referred to the collateral sources on direct examination in the following exchange with her attorney:

Q. Mrs. Hannah, will you look at all of these [a chart listing various medical bills] and answer whether or not you've received a bill from all of these services listed on this chart in connection with your injuries?

A. Now, the bills, some of them I received, personally but some of them Blue Cross, Blue Shield and Medicaid got. Then I get a billing from them what they've paid, okay, which tells the amount that they paid each one.

At this point, Hannah's attorney did not move to strike the response or offer a limiting instruction. On cross-examination,

Haskins' attorney elicited further information concerning the type and scope of the collateral source payments. Hannah's attorney's objections were overruled by the trial judge as being properly within the scope of cross-examination.

■ Payments received from collateral sources are not generally allowed to be introduced into evidence for purposes of reducing a damage award or showing wrongdoing. *See generally* Fed.R.Evid. 411; 2 Wigmore, Evidence § 282a (3d ed. 1940). Evidence relating to such payments, however, has been held to be admissible for the purpose of establishing the extent of injury or to show that the plaintiff had a motive for feigning injury. *Thompson v. Kawasaki Kisen, K. K.*, 348 F.2d 879 (1st Cir. 1965), *cert. denied*, 382 U.S. 987, 86 S.Ct. 540, 15 L.Ed.2d 475 (1966). *Cf. Eichel v. New York Central Railroad*, 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) (collateral source payments inadmissible as bearing on the extent and duration of disability in F.E.L.A. cases); *Hrnjak v. Graymar, Inc.*, 4 Cal.3d 725, 94 Cal.Rptr. 623, 484 P.2d 599 (1971) ("collateral source rule" applied absent a court finding, outside of the presence of the jury, that there is a strong inference of malingering). *See generally* Annot. 47 A.L.R.3d 235 (1973).

■ In this case, however, we need not decide whether a trial court may in all instances, upon a proper weighing of the prejudicial effects of collateral source payments against the probative value of the information, allow the introduction of the testimony. Here, Hannah made a specific reference to collateral payments on direct examination by her attorney. The scope of the permissible inquiry is thus set by the direct examination and the usual rules on cross-examination apply.

"Cross-examination should be limited to the subject matter of the direct examination and matter affecting the credibility of the witness. * * *" Fed.R.Evid.

---

**2.** Dr. Ganesh billed Hannah for over $8,000 but did not appear at trial. Instead, a video tape deposition, which is not in the record, was shown to the jury.

611(b).[3] The State of Missouri also follows the narrower rule with regard to the scope of cross-examination as applied to the specific matter of collateral sources. The Supreme Court of Missouri held that inadvertent admission into evidence by a plaintiff of collateral sources does not open the door to unlimited cross-examination by an adversary, *Iseminger v. Holden*, 544 S.W.2d 550, 554 (Mo.1976), thus modifying an earlier case holding that the scope of cross-examination will be limited only if the inadvertent admission "was wholly irrelevant and immaterial under any view of the issues." *Grantham v. Herod*, 320 S.W.2d 536, 538 (Mo.1959). Here, the direct evidence was not wholly irrelevant and immaterial.

Moreover, the permissible range of the cross-examination rests largely in the trial court's discretion. *United States v. Drake*, 542 F.2d 1020, 1022 (8th Cir. 1976), *cert. denied*, 429 U.S. 1050, 97 S.Ct. 762, 50 L.Ed.2d 766 (1977); Fed.R.Evid. 611(b). In this case, the evidence concerning collateral source payments may well have been relevant to the nature and extent of Hannah's injuries, in addition to the reasonableness of her medical expenses. The medical testimony of both Dr. Ganesh and Dr. Thiele revealed no broken bones or injured discs. Furthermore, Dr. Thiele's testimony directly contradicted Dr. Ganesh's deposition which contained a diagnosis of permanent injury. The issue of damages, an essential element of negligence, was in controversy. When viewed in light of Hannah's direct testimony concerning her incurrence of thousands of dollars in medical bills and of her diligent visits to Dr. Ganesh, Hannah's direct testimony regarding collateral source payments, even though inadvertent, left open the possibility of cross-examination concerning the subject by opposing counsel. The possible prejudice against Hannah which may result from a fuller examination of the collateral source payments revealed by her on direct is outweighed by the necessity to protect the full range of inquiry allowed by cross-examination, a fundamental part of the adversary system. *See Gladden v. P. Henderson & Co.*, 385 F.2d 480, 483–84 (3d Cir. 1967), *cert. denied*, 390 U.S. 1013, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968).

Hannah also contends that the District Court erred in denying plaintiff's motions for a judgment notwithstanding the verdict or, in the alternative, for a new trial. In ruling on a motion for judgment N.O.V., the trial judge must view the evidence "in a light most favorable to the nonmovant and he must be given the benefit of all legitimate inferences, * * * and the verdict must be sustained if there is substantial evidence to support it." *Banks v. Koehring Co.*, 538 F.2d 176, 178 (8th Cir. 1976). The conflicting testimony supports a jury finding that defendants were not negligent, and also raised a jury issue on Hannah's injuries. It is true as posited by Hannah that rear-end collisions give rise to an inference of negligence, but here Hannah's prima facie case of negligence was sufficiently rebutted to raise a jury issue. Plaintiff was not entitled to a directed verdict on defendant's negligence.

The trial judge also denied Hannah's motion for a new trial under Federal Rule of Civil Procedure 59(a). This decision will only be reversed by this court upon a showing of an abuse of discretion. *Pitts v. Electro-Static Finishing, Inc.*, 607 F.2d 799 (8th Cir. 1979). In addition to those considerations involved in ruling on a Rule 50(b) judgment N.O.V. motion, the Rule 59(a) new trial motion may invoke the exercise of the trial court's discretion to grant a new trial on the ground that prejudicial error has been committed in the trial of the action. On appeal, Hannah designated two assignments of error: (1) that the verdict was unsupported by the evidence, and (2) that the testimony relating to collateral source payments should not have been admitted. We have found neither of these to have sufficient merit to warrant a reversal of the jury verdict. Accordingly, the trial judge did not abuse his discretion.

Affirmed.

---

**3.** Congress rejected the broader rule originally submitted by the Supreme Court, which allowed cross-examination "on any matter relevant to any issue in the case." *See* H.R.Rep. No.93–650, 93d Cong., 1st Sess. 12 (1973).