2011 OK 30

**Philip ESTRADA, Plaintiff/Appellee,**

v.

**PORT CITY PROPERTIES, INC., d/b/a, Hodges Warehouse, Defendant/Appellant.**

No. 107,552.

Supreme Court of Oklahoma.

April 19, 2011.

Robert V. Seacat, Tulsa, Oklahoma, for Plaintiff/Appellee.

Kenneth L. Brune, Tulsa, Oklahoma, for Defendant/Appellant.

KAUGER, J:

¶1 The dispositive issues presented[1] are whether: 1) the trial court erred in submitting the issue of punitive damages to the jury after it had determined that there was no evidence presented which would warrant punitive damages; 2) the collateral source rule applies to retaliatory discharge proceedings when financial hardship is alleged; and 3) the actual damages awarded were excessive under the evidence presented. We hold that: 1) because no evidence was presented which would warrant a punitive damages award, the trial court erred in submitting the issue to the jury; 2) the collateral source rule applies to retaliatory discharge proceedings regardless of whether financial hardship is alleged; and 3) the actual damages awarded were not excessive under the evidence presented.

## FACTS

¶2 The plaintiff, Phillip Estrada (employee/Estrada), began working for the defendant, Port City Properties, Inc. d/b/a Hodges Warehouse (Hodges/employer), in Okmulgee, Oklahoma, on June 13, 2001. His job was to unload freight coming into the warehouse, and then separate shipping pallets into "good" and "bad" piles before sending them out to two different destinations. After approximately one year and a couple of months, Estrada moved to another division of Hodges called Kelco where he also unloaded freight.

¶3 On January 16, 2003, the employee was walking to the time clock when a coworker called his name to get his attention and he tripped over what appeared to be a steel beam or "some kind of debris." The employee fell back, heard a pop, and fell to the ground, twisting his ankle. At the time of the fall, Estrada thought he had just twisted his ankle, but by the next morning he could not walk on it. Estrada called his supervisor, Sam Thomas (supervisor), and asked what he should do. The supervisor recommended that Estrada go to the local emergency room. He did, and at the emergency room, the employee's ankle was x-rayed, he was given pain medication and crutches, and then referred to a specialist, Dr. Therron Nichols.

¶4 The employee filled out an accident report at Hodges on January 20, 2003, and went to an appointment with the specialist the next day.[2] Dr. Nichols restricted the employee from going back to work until March 7, 2003.[3] The employee returned to work on Monday, March 10, 2003, and started unloading trucks as usual. Estrada talked to an insurance adjuster of Hodge's insurance carrier, Compsource, over his lunch break, who inquired how his ankle was doing. He told the adjuster that his ankle was starting to hurt and swell again, just like it did the first day he injured it. The adjuster arranged for Estrada to see another orthopedic specialist, Dr. Hawkins, on March 12, 2003. Dr. Hawkins again restricted the employee from going to back to work.

¶5 According to Estrada, he told his supervisor about the appointment and he also informed the supervisor afterwards that Dr. Hawkins had restricted him from work, and ordered him to attend physical therapy. Estrada hired a lawyer to represent him in filing a Form 3 for a Workers' Compensation

---

1. The appellant raised sixteen issues of error, all of which concerned whether a new trial should be required. We have consolidated the issues into three dispositive issues.

2. Apparently the employer filed a Form 2, Employer's First Notice of Injury to the Workers' Compensation Court, on February 7, 2003. Plaintiff's exhibit 4 at trial is the Form 2, Employer's First Notice of Injury but it does not contain a file stamp of the Workers Compensation Court.

3. Although Estrada had not hired a lawyer or filed his own workers' compensation claim, the employee began receiving some "benefits" from Hodges approximately three weeks after he was off work due to the injury. The record is unclear as to the amount of these "benefits" or exactly what the "benefits" were intended to represent, but presumably, Hodges was providing the employee with some temporary total disability payments.

Claim and on April 11, 2003, the lawyer filed the claim on behalf of the employee.[4]

¶ 6 During the course of his treatment the employee was sent to a third doctor, a Dr. Lewis, who after administering an M.R.I. discovered internal damage[5] to the ankle which required surgery. The employee underwent surgery on June 19, 2003, followed by about eight weeks of rehabilitation. Finally, Dr. Lewis released the employee to return to work with no restrictions on September 23, 2003.

¶ 7 According to the employee, when he showed up for work on the 23rd, he was sent to the shipping office where he was told that they no longer had any work for him. Estrada went home confused about what exactly had happened. On September 30, 2003, he filed for unemployment benefits stating that he was terminated because he was told he was no longer needed.[6] That same day, the financial manager of Hodges faxed an explanation to the "Unemployment Insurance Service" stating that Estrada was not "discharged," but that they had replaced Estrada while he was absent and they did not have any work for him to do after his release.

¶ 8 On November 12, 2003, Estrada filed an action in the District Court of Okmulgee County. He alleged that he was fired in retaliation for filing a workers' compensation claim and for retaining a lawyer to represent him regarding the claim in violation of 85 O.S. Supp.2005 § 5.[7] By November 23, 2003, Estrada had secured other employment.

¶ 9 A two-day trial occurred in October of 2005, and upon presentation of the employee's case, the employer interposed a demurrer to the evidence and motion for directed verdict which the trial court granted and which was reversed on appeal.[8] A second

---

4. The employee hired a lawyer because during this period Estrada's wife began to question the sufficiency of the amount of "benefits" Estrada was receiving. After hiring the lawyer, he started receiving significantly increased benefits, according to Estrada.

5. According to the employee's testimony in Transcript of March 2, 2009, p. 36, lines 17–22, the surgery he underwent grafted a torn ligament, anchored the side of his ankle, and removed bone spurs off of the top.

6. The employee's testimony was consistent with the form he filed with the Oklahoma Employment Security Commission which was included in the record as Plaintiff's Exhibit No. 9 to the Transcript of March 2, 2009, and in it, the employee states that he was discharged because he was told he was "no longer need[sic] there." Estrada also reported that he did not agree with the employer's reason for discharge stating:

   I have just been released from the Doctor on 092903. I had reconstructive surgery due to an on the job injury and have been off the job on workers compensation. I was hurt at work on January 16, 2003 and I got an attorney to make sure that my rights were protected. And I think that they are mad because I got an attorney.

7. Title 85 O.S. Supp.2005 § 5 provides:

   A. No person, firm, partnership, corporation, or other entity may discharge, or, except for nonpayment of premium, terminate any group health insurance of any employee because the employee has in good faith:
   1. Filed a claim;

2. Retained a lawyer for representation regarding a claim;
   3. Instituted or caused to be instituted any proceeding under the provisions of this title;
   4. Testified or is about to testify in any proceeding under the provisions of this title; or
   5. Elected to participate or not to participate in a certified workplace medical plan as provided in Section 14 of this title.
   B. No person, firm, partnership, corporation, or other entity may discharge any employee during a period of temporary total disability solely on the basis of absence from work.
   C. After an employee's period of temporary total disability has ended, no person, firm, partnership, corporation, or other entity shall be required to rehire or retain any employee who is determined to be physically unable to perform assigned duties. The failure of an employer to rehire or retain any such employee shall in no manner be deemed a violation of this section.
   D. No person, firm, partnership, corporation or other entity may discharge an employee for the purpose of avoiding payment of temporary total disability benefits to the injured employee.
   References are to the current version of the statute. We note that subsection (D) was added in 2005, otherwise, the statute remains unchanged from its previous version. Damages are then provided pursuant to 85 O.S.2001 § 6, see note 11, infra. Title 85 O.S.2001 § 7 provides:
   Except as otherwise provided for by law, the district courts of the state shall have jurisdiction, for cause shown, to restrain violations of this act.

8. The trial court held that the employee failed to establish a *prima facie* case for retaliatory discharge. The employee appealed, and the Court

trial was held on March 2–4, 2009, and the employee recounted his story concerning the injury and the alleged firing. He also testified that he suffered financial hardship, physical and mental pain, and emotional and mental anguish as a result of his firing. The employer, on the other hand, presented another version of the facts.

¶ 10 The employer insisted that the employee had not been "fired," but that he instead "abandoned" his employment in March, 2003. Hodges also explained that the financial manager did not "correctly describe the situation" when she sent in the unemployment report stating that Estrada was

turned away because they no longer had any work for him. The evidence at trial indicated that Hodges gave inconsistent versions as to how the events unfolded.[9]

¶ 11 Both parties moved for directed verdicts which were denied. However, the trial court made a preliminary determination that there was not any evidence of any reckless discharge or wilful or intentional discharge or firing which would support an award of punitive damages. Nevertheless, the trial court also determined that, collectively, pursuant to 23 O.S. Supp.2002 § 9.1 and 85 O.S.2001 § 6,[10] "I make a ruling not only that

of Civil Appeals in an opinion released for publication, *Estrada v. Port City Properties, Inc.*, 2007 OK CIV APP 23, 158 P.3d 495, reversed and remanded. It held that on the evidence presented reasonable people might conclude that the employer terminated the employee merely out of business necessity or that the employer terminated the employee because he retained a lawyer to pursue additional temporary total disability benefits and the reason given for termination was merely pretextual. Mandate of the Court of Civil Appeals opinion issued on March 21, 2007.

9. Apparently, Hodges initially maintained that: 1) Estrada returned to work after being released in March of 2003, and requested a different job which he was given but that he did not like the job so he left, abandoning his employment; and 2) Estrada then reappeared in September, after an absence of six months, and asked for his old job back, but was told Hodges had suffered a layoff and loss of accounts and revenue which resulted in the need for less labor, thus no openings for Estrada. However, the testimony at trial reflects that Hodges thought that Estrada abandoned his job in March of 2003, but showed up again in September of 2003, seeking to return to his old pallet job and was informed that there was no longer any work in pallets. Estrada was then allegedly offered another job on the glass line, but he refused the job and stormed out of the office. According to Estrada's supervisor, he did not even know that the employee was being represented by a lawyer in September of 2003— nor did he care.

10. Title 23 O.S. Supp.2002 § 9.1 provides:

A. In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C and D of this section, award punitive damages for the sake of example and by way of punishing the defendant based upon the following factors:
1. The seriousness of the hazard to the public arising from the defendant's misconduct;

2. The profitability of the misconduct to the defendant;
3. The duration of the misconduct and any concealment of it;
4. The degree of the defendant's awareness of the hazard and of its excessiveness;
5. The attitude and conduct of the defendant upon discovery of the misconduct or hazard;
6. In the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and
7. The financial condition of the defendant.
B. Category I. Where the jury finds by clear and convincing evidence that:
1. The defendant has been guilty of reckless disregard for the rights of others; or
2. An insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured; the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greater of:
a. One Hundred Thousand Dollars ($100,-000.00), or
b. the amount of the actual damages awarded.
Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.
C. Category II. Where the jury finds by clear and convincing evidence that:
1. The defendant has acted intentionally and with malice towards others; or
2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured; the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greatest of:
a. Five Hundred Thousand Dollars ($500,-000.00),
b. twice the amount of actual damages awarded, or

there's no evidence to support that [the issue of punitive damages], that it still goes to the jury."[11]

¶ 12 On March 4, 2009, the jury returned a verdict in favor of the employee and awarded him $76,730.00.[12] It also found that the employer acted in reckless disregard of the employee's rights and acted intentionally with malice. In the punitive damages phase of the jury deliberations, the jury returned a verdict for $18,398.00 in punitive damages.[13]

¶ 13 On September 17, 2009, the employer appealed, raising sixteen issues of error all of which concern whether a new trial should be required. On February 22, 2010, the employer filed a motion to retain the cause in this Court. We retained the cause on April 20, 2010, and the briefing was completed on May 20, 2010. The cause was assigned on June 1, 2010. However, it became apparent that portions of the record were unintentionally omitted.[14] We issued an order on October 20, 2010, allowing the parties an opportunity to correct the incomplete record. The record was finally completed on December 7, 2010.

## I.

¶ 14 **BECAUSE NO EVIDENCE WAS PRESENTED WHICH WOULD WARRANT THE IMPOSITION OF PUNITIVE DAMAGES, THE TRIAL JUDGE ERRED IN SUBMITTING THE ISSUE TO THE JURY.**

¶ 15 The employer argues that the trial court erred when it determined that, collec-

c. the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities.
The trial court shall reduce any award for punitive damages awarded pursuant to the provisions of subparagraph c of this paragraph by the amount it finds the defendant or insurer has previously paid as a result of all punitive damage verdicts entered in any court of this state for the same conduct by the defendant or insurer. Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.
D. Category III. Where the jury finds by clear and convincing evidence that:
1. The defendant has acted intentionally and with malice towards others; or
2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured; and the court finds, on the record and out of the presence of the jury, that there is evidence beyond a reasonable doubt that the defendant or insurer acted intentionally and with malice and engaged in conduct life-threatening to humans, the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in any amount the jury deems appropriate, without regard to the limitations set forth in subsections B and C of this section. Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.
E. In determining the amount, if any, of punitive damages to be awarded under either subsection B, C or D of this section, the jury shall make the award based upon the factors set forth in subsection A of this section.

F. The provisions of this section are severable, and if any part or provision thereof shall be held void, the decision of the court shall not affect or impair any of the remaining parts or provisions thereof.
G. This section shall apply to all civil actions filed after the effective date of this act.
Title 85 O.S.2001 § 6:
Except as provided in Section 29 of this act, a person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages, actual and punitive if applicable, suffered by an employee as a result of the violation. An employee discharged in violation of the Workers' Compensation Act shall be entitled to be reinstated to his former position. Exemplary or punitive damage awards made pursuant to this section shall not exceed One Hundred Thousand Dollars ($100,000.00). The burden of proof shall be upon the employee.

11. Trial transcript of March 3, 2009, see note 32, infra.

12. The March 4, 2009, jury form initially had $5,297.00 listed as the actual damages, but the jury marked it out and changed the amount to $76,730.00.

13. The trial court entered its Journal Entry of Judgment on April 22, 2009, which also awarded prejudgment interest of $32,486.17 making the total amount awarded $127,014.17, together with post judgment interest and costs. On May 4, 2009, the employer filed a motion for new trial and/or remittitur, which the trial court denied on August 20, 2009.

14. Even though a designation of record had been filed in the trial court, it appeared as though the entire record was formed from the counter-designation only, rather than both the designation of

tively, pursuant to 23 O.S. Supp.2002 § 9.1 [15] and 85 O.S.2001 § 6,[16] it was required to submit punitive damages issues to the jury, even though the judge had already determined that no evidence of any reckless, malicious, wilful or intentional discharge or firing was presented at trial which would support a punitive damages award. The employee contends that: 1) whether the employer's conduct falls into one of the categories necessary to impose punitive damages under 23 O.S. Supp.2002 § 9.1 [17] is strictly a jury question and not for the trial court to determine; and 2) between the jury instructions which were given and the two statutes, the proper procedure was followed and the jury was properly instructed.

¶ 16 While an employer is not obligated in an employment-at-will contract to prove good faith or fair dealing when its employee is terminated,[18] 85 O.S. Supp.2005 § 5 [19] represents the public policy of this state, that no employer may discharge (retaliate against) an employee for exercising a legal right to file a workers' compensation claim.[20] When a breach of obligations arises from tortious conduct, punitive (exemplary) damages may be recoverable.[21]

¶ 17 Prior to 1995, the statutory framework for awarding punitive damages was

the appellant and the counter-designation of the appellee.

**15.** Title 23 O.S. Supp.2002 § 9.1, see note 10, supra.

**16.** Title 85 O.S.2001 § 6, see note 10, supra.

**17.** Title 23 O.S. Supp.2002 § 9.1, see note 10, supra.

**18.** *Redricks v. Industrial Vehicles Intern. Inc.,* 2002 OK 13, ¶ 5, 45 P.3d 416; *Burk v. K–Mart Corp.,* 1989 OK 22, ¶¶ 4, 6, 770 P.2d 24.

**19.** Title 85 O.S. Supp.2005 § 5 see note 7, supra.

**20.** *Redricks v. Industrial Vehicles International, Inc.,* see note 18, supra at ¶ 1; *Hinson v. Cameron,* 1987 OK 49, ¶ 10, 742 P.2d 549. Under this rule of law: 1) the statute's protections are limited to good faith actions taken by an employee who has suffered a work related injury; 2) an employer may, without incurring liability, discharge an employee who is physically unable to perform job duties; 3) the employee must offer evidence to establish circumstances that the discharge was significantly motivated by retaliation for exercising a statutory right; and 4) if retaliation motivations comprise a significant factor in an employer's decision to terminate an employee, even though other legitimate reasons exist to justify the termination, the discharge violated the intent of § 5. *Mosley v. Truckstops Corp. of America,* 1993 OK 79, ¶ 5, 891 P.2d 577; *Buckner v. General Motors Corp.,* 1988 OK 73, ¶ 9, 760 P.2d 803; and collectively, *Thompson v. Medley Material Handling, Inc.,* 1987 OK 2, ¶ 5, 732 P.2d 461; *Elzey v. Forrest,* 1987 OK 58, ¶ 7, 739 P.2d 999; and *Pierce v. Franklin Electric Co.,* 1987 OK 34, ¶ 2, 737 P.2d 921. Once the employee makes a *prima facie* showing, the burden shifts to the employer. *Wilson v. Hess–Sweitzer & Brant, Inc.,* 1993 OK 156, ¶ 17, 864 P.2d 1279; *Elzey v. Forrest,* supra at ¶ 11. *See, Bishop v. Hale–Halsell Co., Inc.,* 1990 OK 95, 800 P.2d 232 for a full discussion on the employer's burden of production.

**21.** Title 23 O.S. Supp.2002 § 9.1, see note 10, supra. *Wallace v. Halliburton Co.,* 1993 OK 24, ¶ 18, 850 P.2d 1056. *See, e.g., Burk v. K–Mart Corp.,* see note 18, supra at ¶ 17 [Punitive damages are not recoverable for a breach of contract unless the conduct constitution the breach is also a tort for which punitive damages are recoverable.]; *Mac Adjustment, Inc. v. Property Loss Research Bureau,* 1979 OK 41, 595 P.2d 427 [A tortious interference claim is predicated on the tort.]. Punitive damages are awarded only in the most egregious circumstances and are aimed at punishing the offending party. *Wilspec Technologies, Inc. v. DunAn Holding Group Co., LTD.,* 2009 OK 12, ¶ 18, 204 P.3d 69. Exemplary damages are a tool to deter the wrongdoer and are for society's benefit, not the litigating party's. *Slocum v. Phillips Petroleum Co.,* 1983 OK 112, ¶ 18, 678 P.2d 716; *Cox v. Theus,* 1977 OK 158, ¶ 10, 569 P.2d 447. In addition to proving the elements of a tort, the plaintiff seeking punitive damages must prove that the defendant acted either recklessly, intentionally or maliciously by clear and convincing evidence. Title 23 O.S. Supp.2002 § 9.1, see note 10, supra. *Wilspec Technologies, Inc. v. DunAn Holding Group Co., LTD.,* supra. *See also, Slocum v. Phillips Petroleum Co.,* supra at ¶¶ 17–18 [To entitle a plaintiff to recover exemplary damages in an action sounding in tort, the proof must show some elements of fraud, malice or oppression and the act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence—such disregard of another's rights—as is deemed equivalent to such intent. Exemplary damages are highly penal and punishment thereof should not be lightly imposed.]; *Cox v. Theus,* supra; *Webb v. Dayton Tire and Rubber Co.,* 1985 OK 7, ¶ 7, 697 P.2d 519 [In the absence of the deterrent effect of punitive damages, there would be little to dissuade an employer from engaging in the practice of discharging for filing a workman's compensation claim.].

found at 23 O.S.1991 § 9.[22] In *Sides v. Cordes, Inc.*, 1999 OK 36, ¶ 11, 981 P.2d 301, we examined the requirements of this version of § 9. We noted that two preliminary evidentiary findings were required to be made by the trial judge: 1) if the trial judge determined that there was *any competent evidence* demonstrating that the defendant has engaged in at least one of the statutorily enumerated behaviors, the judge was required to submit to the jury the plea for *capped* punitive damages; and 2) if the trial judge determined that there was *clear and convincing evidence* that the defendant was guilty of at least one of the enumerated behaviors, the trial judge was required to submit to the jury the plea for *uncapped* punitive damages.[23]

¶ 18 Both of these threshold rulings presented issues of law for the trial judge.[24] It is the first stage of the process that leads to an award of punitive damages and opens the second stage—the jury's ultimate decision of whether the evidence actually warrants punitive damages, and if so, in what amount. We also noted that previous cases provide that the trial court has a duty to submit a punitive damages question to the jury unless there is a complete lack of evidence to support an inference of the conduct required by § 9.[25]

¶ 19 Title 23 O.S. Supp.2002 § 9.1 is the current statutory vehicle that governs all claims for punitive damages.[26] The current version of the statute, § 9.1, expands the factors and it is directed at the jury, and not

---

22. Title 23 O.S.1991 § 9 provided:

A. In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant, in an amount not exceeding the amount of actual damages awarded. Provided, however, if at the conclusion of the evidence and prior to the submission of the case to the jury, the court shall find, on the record and out of the presence of the jury, that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, then the jury may give damages for the sake of example, and by way of punishing the defendant, and the percentage limitation on such damages set forth in this section shall not apply.

B. The provisions of this section shall be strictly construed.

Title 23 O.S.1991 § 9. It allowed for punitive damages in an amount not to exceed actual damages but also gave the trial court had the authority to lift that cap on punitive damages depending on the evidence submitted and the findings of the trial court outside of the presence of the jury. The current version of the statute no longer has this provision in it. It does however, have a provision which allows the trial court to reduce punitive awards against insurers if any other punitive verdicts have been entered against them for the same conduct in another court of this state. It also allows the trial court to lift the cap on damages if it finds there is evidence beyond a reasonable doubt that the defendant acted intentionally and with malice towards others. The text of 23 O.S.1991 § 9 was repealed by Laws 1995, c. 287, § 4 and was replaced by the provi-

sions of 23 O.S. Supp.1995 § 9.1, effective August 25, 1995.

23. The standard of review by this Court in reviewing the first determination is whether there is any competent evidence to support the trial court's decision. *Wilson, v. Hess–Sweitzer & Brant, Inc.*, see note 20 supra at ¶ 11; *Slocum v. Phillips Petroleum Co.*, see note 21, supra at ¶ 19. The standard of review in reviewing the second determination is whether there was clear and convincing evidence to support the trial judge's special findings. *Wilson, v. Hess–Sweitzer & Brant, Inc.*, see note 20, supra.

24. *Sides v. Cordes, Inc.*, 1999 OK 36, ¶ 11, fn. 10, 981 P.2d 301, explaining that while the initial determination is a question of law for the court, the latter—whether to allow or deny punitive damages and their amount, if any—is left to the discretion of the trier of fact, be that judge or jury. *Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, ¶ 17, 867 P.2d 1241.

25. *Sides v. Cordes, Inc.*, see note 24, supra at ¶ 11, fn. 8. *See, e.g., Shuman v. Laverne Farmers Coop.*, 1991 OK CIV APP 2, ¶ 9, 809 P.2d 76; *Sopkin v. Premier Pontiac*, 1975 OK CIV APP 47, ¶ 22, 539 P.2d 1393. *See also, Slocum v. Phillips Co.*, see note 21, supra at ¶ 19 wherein the Court noted that the only issue concerning damages was whether there was any competent evidence to submit the issue of exemplary damages to the jury.

26. *Wilspec Technologies, Inc. v. DunAn Holding Group Co., LTD.*, see note 21, supra at ¶ 1. *See, Sides v. Cordes, Inc.*, see note 24, supra at ¶ 10. In *Gilbert v. Security Finance Corp. of Oklahoma, Inc.*, 2006 OK 58, ¶ 74, 152 P.3d 165, we recently upheld the constitutionality of 23 O.S. Supp.2002 § 9.1.

the reviewing court.[27] It allows an award of punitive damages based upon several enumerated factors such as: the seriousness, profitability, duration, concealment, and awareness of the misconduct; and the attitude and financial condition of the employer.[28] Categories of the defendant's conduct are created which limit punitive damages to $100,000.00 where the defendant has acted in reckless disregard to the rights of other and to $500,000.00 where the conduct is intentional and with malice.[29] However, for workers' compensation retaliatory discharge actions such as this cause, 85 O.S.2001 § 6[30] expressly limits an award of punitive damages against an employer to $100,000.00 and it has no provisions for lifting that cap.[31]

¶ 20 Nothing in the current statutory framework changes the trial court's responsibility to determine whether *any competent evidence* exists which would warrant submission the question of punitive damages to the jury. Once this determination is made, the statute guides the jury as to the many factors of conduct to consider, the level of con-

duct, and the degree of proof necessary to make an award of punitive damages, if any.

¶ 21 Here, the trial court determined that there was no evidence to submit the question of punitive damages to the jury, but submitted it anyway.[32] The error, if any, which may have occurred is twofold: 1) whether the trial court erred in its determination that no evidence existed on which to base a punitive damages award; and 2) if there was no such evidence, then did the trial court err in submitting the issue to the jury anyway.

¶ 22 Because employers seldom admit to any wrongdoing, evidence is often mostly circumstantial but it must at least be sufficient to support a legal inference that the discharge was significantly motivated by retaliation.[33] However, exemplary damages are only awarded in such cases where fraud, oppression, gross negligence or malice, actual or presumed, enter into the cause of action, but a person may commit such wilful acts in such reckless disregard of another's rights that malice may be inferred even in cases where there is no direct evidence.[34]

**27.** *Gilbert v. Security Finance Corp. of Oklahoma, Inc.*, see note 26, supra at ¶ 43.

**28.** Title 23 O.S. Supp.2002 § 9.1, see note 10, supra; *Gilbert v. Security Finance Corp. of Oklahoma, Inc.*, see note 26, supra at ¶ 28.

**29.** Title 23 O.S. Supp.2002 § 9.1, see note 10, supra. Although the statute has no express provision for review of a punitive damages award, the Court does review such award as safeguards against excessive verdicts. *Gilbert v. Security Finance Corp. of Oklahoma, Inc.*, see note 24, supra at ¶ 35 and ¶ 43 which explains the review process for appealing a jury verdict.

**30.** Title 85 O.S.2001 § 6, see note 10, supra.

**31.** In *Wilson v. Hess–Sweitzer & Brant, Inc.*, see note 20 at ¶ 9, the Court held that 85 O.S.1991 § 6 allowed punitive damages in constructive discharge cases, but 23 O.S.1991 § 9 sets forth the conduct to which punitive damages apply. Nevertheless, § 6 caps those damages at $100,000.00. The two statutes work together.

**32.** The trial transcript of March 3, 2009, provides in pertinent part at pp. 44–45:
THE COURT: Okay. It seems absolutely idiotic to me and irrational of y'all—anything that I've ever heard before where the Court is the gatekeeper on something like that, and I make a ruling not only that I don't find that there's clear and convincing, but also that I

find that there's no evidence to support that, that it still goes to the jury for a question of whether they can come up with something like that . . .
And, again, it makes no sense to me for a Court to be a gatekeeper to try to keep that stuff from out of the hands of the jury when there isn't any evidence, in my opinion, to support it. But, again, it appears that that's what the law, and I—I'm going to follow the law, although I don't like it. And so we're going to allow that despite my nauseated feeling over what apparently the state of the law is in Oklahoma for punitive damages. . . .

**33.** *Wallace v. Halliburton Co.*, see note 21, supra at ¶ 6.

**34.** *Hamilton v. Amwar Petroleum Co., Inc.*, 1989 OK 15, ¶ 12, 769 P.2d 146; *Slocum v. Phillips Petroleum Co.*, see note 21, supra; *Oden v. Russell*, 1952 OK 414, ¶ 0, 251 P.2d 184. Also, the act may be the result of such gross negligence, such disregard of another's rights that it is deemed equivalent to such intent. *Edwards v. Lachman*, 1974 OK 58, ¶ 12, 534 P.2d 670; *Dilworth v. Fortier*, 1964 OK 112, ¶ 41, 405 P.2d 38. In *Sides v. Cordes, Inc.*, see note 24, supra at ¶ 14, we discussed sufficiency of proof, stating:

When reviewing the proof's sufficiency, the question is whether a prima facie case has been presented. A prima facie case is made

¶ 23 An employee must offer evidence to warrant an instruction on punitive damages.[35] We have previously noted that the **timing** of a discharge, by itself, does not give rise to the level of evidence required to establish a *prima facie* case, but may be evidence of a retaliatory discharge.[36] Similarly, the fact that the employee was discharged in retaliation for filing a workers compensation claim is not enough to support an award of punitive damages.[37]

¶ 24 In examining the entire record, we conclude that there was not any evidence of such disregard of the employee's rights which would support a claim of punitive damages. The evidence showed that the employee never experienced any adverse injury-related absence when he returned in March, but after he hired an attorney and after his temporary total disability was adjusted, he was terminated. Although the employer offered evidence that the termination was due to a decline in business and the needs of the department, it also offered differing reasons such as that the employee abandoned his job and/or refused employment in a different department.

¶ 25 The testimony and evidence at trial establishes direct, inferred, and circumstantial evidence which taken together could have led the trier of fact to legally infer that the discharge was significantly motivated by retaliation for exercising a statutory right and that the employer's reasons for terminating the employee were pretextual.[38] However, there is simply no evidence sufficient to support a claim for punitive damages. Consequently, the trial court erred in submitting the issue to the jury and the award for punitive damages is stricken.

## II.

¶ 26 **THE COLLATERAL SOURCE RULE APPLIES TO RETALIATORY DISCHARGE PROCEEDINGS REGARDLESS OF WHETHER FINANCIAL HARDSHIP IS ALLEGED.**

¶ 27 Under the collateral source rule, benefits received by the plaintiff from any source other than the tortfeasor will not reduce the quantum of recoverable damages.[39] Here, the trial court refused to allow

---

out by that quantum of proof which, if unexplained or uncontradicted, is sufficient to establish a given fact and to uphold a judgment in favor of the issue which it supports, but which may be refuted by other evidence. The evidence may be direct or it may be such as supports an inference in favor of the fact in question. In the context of a punitive damages award, one's successful presentation of a prima facie case gets the issue of punitive damages to the jury ... (Citations omitted.)

We also discussed in *Sides v. Cordes, Inc.*, supra at ¶ 14, fn. 14, the distinction between direct evidence and indirect evidence, noting:

Direct evidence is that which will persuade the fact finder of the existence of a fact without the necessity of drawing any inferences from the evidence. Indirect, or circumstantial evidence, is that evidence from which inferences must be drawn in determining the existence of the disputed fact. Leo Whinery, Oklahoma Evidence, § 14.04, p. 276 (1994).

**35.** *Wallace v. Halliburton Co.*, see note 21, supra at ¶ 18. For instance, while not the only evidence which would support punitive damages, a pattern of retaliatory discharge conduct would justify a punitive damages award.

**36.** *Wallace v. Halliburton Co.*, see note 21, supra; *Thompson v. Medley Material Handling, Inc.*, see note 20, supra at ¶ 10.

**37.** *Wallace v. Halliburton Co.*, see note 21, supra at ¶ 9.

**38.** Under the circumstances—contradictory testimony of both parties and the dispute over the timing of the employee's termination—a retaliatory motive may have been suggested. It was for the trier of fact, in this case the jury, who observed the demeanor of the witnesses and heard their testimony, to decide the credibility of the witnesses and the effect and weight to be given conflicting or inconsistent testimony. *Mosley v. Truckstops Corp. of America*, see note 20, supra at ¶ 20; *Central Plastics Co. v. Goodson*, 1975 OK 71, ¶ 29, 537 P.2d 330.

**39.** *Gladstone v. Bartlesville Independent School Dist. No. 30*, 2003 OK 30, ¶ 22, fn. 56, 66 P.3d 442. The collateral source rule had been summarized as traditionally applying in the context of common law tort actions to determine the amount of compensatory damages which will compensate the injured party for all damages proximately causes. *Worsham v. Nix*, 2006 OK 67, ¶ 19 fn. 7, 145 P.3d 1055; *Blythe v. University of Oklahoma*, 2003 OK 115, ¶ 7, 82 P.3d 1021. *See*, 23 O.S.2001 § 61 which provides:

For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate

the jury to consider evidence that the employee received unemployment benefits as a collateral source.[40] The employer argues that the trial court erred when it refused to allow evidence such as the amount of unemployment compensation he was receiving, relying on cases from other jurisdictions which have held that collateral source evidence may be admitted for impeachment purposes when the plaintiff is claiming a particular financial condition exists—in this case, financial hardship caused by the alleged retaliatory discharge. The employee insists that the rule applies to any use of collateral source evidence.

¶ 28 In *Denco Bus Lines v. Hargis*, 1951 OK 11, ¶ 26, 229 P.2d 560, a case involving an employee who received sick benefits from her employer from the time she was disabled as a result of injuries sustained in a bus accident, we explained that:

> Upon commission of a tort it is the duty of the wrongdoer to answer for the damages wrought by his wrongful act, and that is

measured by the whole loss so caused and the receipt of compensation by the injured party from a collateral source wholly independent of the wrongdoer does not operate to lessen the damages recoverable from the person causing the injury.[41]

¶ 29 In *Blythe v. University of Oklahoma*, 2003 OK 115, 82 P.3d 1021, the Court thoroughly discussed the collateral source rule and its application in the context of workers compensation actions. In *Blythe*, a workers' compensation claimant initiated a claim for a work-related injury primarily to her neck and consequential psychological overlay injury arising from lifting, bending, and straining. At issue in *Blythe* was the claimant's prescription expense reimbursement by a personally paid portion of premiums for her health insurance coverage as part of the employment benefit package. Ultimately, the claimant was allowed reimbursement for out-of-pocket expenses for prescription medication under the collateral source rule.[42]

---

for all detriment proximately caused thereby, whether it could have been anticipated or not. *Denco Bus Lines, Inc. v. Hargis*, 1951 OK 11, ¶ 26, 229 P.2d 560. The general rule applied to determine the proper amount which will compensate for the injured party's "whole loss" in a common law tort action is as follows: total or partial compensation for an injury received by the injured party from a collateral source wholly independent of the wrongdoer will not operate to lessen the damages recoverable from the person causing the injury. Further, it is well settled that damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partially indemnified for loss by insurance effected by the party and to the procurement of which the wrongdoer did not contribute . . . The same has been held true of compensation received by an employee from a benefit fund maintained by the employer. *Blythe v. University of Oklahoma*, supra, (quoting 15 AM. JUR. Damages § 198 and § 201). *See also, Porter v. Manes*, 1959 OK 239, ¶ 11, 347 P.2d 210; *Tidewater Associated Oil Co. v. Ale*, 1942 OK 373, ¶ 13, 130 P.2d 991.

40. In addition to precluding such evidence at trial, the trial court issued jury instruction No. 10, which appears at page 45 in the record and provides:

UNEMPLOYMENT BENEFITS–COLLATERAL SOURCE RULE

You are hereby instructed that in the State of Oklahoma, a collateral source may not be considered by the jury to lessen the damages recoverable from a person or entity causing the

damages. You have heard evidence that the Plaintiff made an application for unemployment benefits as a result of his separation from employment with PORT CITY PROPERTIES, d/b/a HODGES WAREHOUSE. In this case, unemployment benefits are a collateral source. Therefore, you are instructed not to consider whether or not Plaintiff received unemployment benefits in your deliberations to lessen the damages recoverable by Plaintiff against the Defendant, if any. *Witt v. Martin*, 672 P.2d 312 (Okla.Ct.App.1983).

41. See also, 23 O.S.2001 § 61, note 39, supra.

42. We have recognized the application of the rule to medical payments from an injured employee health plans in various scenarios. *See, Blythe v. University of Oklahoma*, see note 38, at ¶ 8, supra; *Robinson v. Borg–Warner Protective Services Corp.*, 2001 OK 59, ¶ 16, 31 P.3d 1041; *Handy v. City of Lawton*, 1992 OK 111, ¶ 21, 835 P.2d 870 [Insurance is a fringe benefit and part of the employee's income and the City's collective bargaining agreement did not allow set-off of benefits.]. However we noted that the collateral source rule was inapplicable to proceeding brought by a lessor against an operator of an oil well alleging improper completion and production in *Feely v. Davis*, 1989 OK 163, ¶ 8, 784 P.2d 1066 [The rule is inapplicable primarily because of the fact that the landowner or mineral owner only has an exclusive right to attempt to gain possession of the oil and gas underlying the owner's property. No absolute title to oil and

¶ 30 We held that: 1) the common law collateral source rule was codified in 85 O.S. 2001 § 45 [43] of the Workers' Compensation Act; and 2) the statute has consistently been construed to refuse evidence of benefits, saving or insurance of an injured employee, independent of the Workers' Compensation Act in determining compensation or benefits to be paid under the act. Clearly, the collateral source rule, by 85 O.S.2001 § 45,[44] has been incorporated into Workers' Compensation proceedings and thus, it extends to tort proceedings such as retaliatory discharge actions which are also codified in the same Act.

¶ 31 Nevertheless, the employer relies on cases from other jurisdictions which have carved out a limited exception to the collateral source rule. In those cases, when the plaintiff is seeking damages for financial hardship caused by the defendant's conduct, evidence of collateral sources of money or income may be used for the limited purpose of impeaching the plaintiff's testimony regarding the extent of the financial hardship, but not to reduce damages.[45]

---

**43.** Title 85 O.S.2001 § 45 provides:

A. No benefits, saving or insurance of the injured employee, independent of the provisions of this act shall be considered in determining the compensation or benefit to be paid under this act.
B. No employee may receive temporary total disability benefits covering the same period of time as unemployment compensation benefits received by the employee as provided by the Oklahoma Employment Security Commission.
We note that this statute also prohibits an employee from receiving unemployment benefits at the same time as temporary total disability. However, this merely applies to the question of benefit recovery, not tort damages recovered from retaliatory discharge.

**44.** 85 O.S.2001 § 45, see note 42, supra.

**45.** *Babbitt v. Quik–Way Lube and Tire, Inc.*, 313 Ark. 207, 853 S.W.2d 273 (1993)[Evidence of information regarding insurance coverage allowed where plaintiff opened the door stating she could not visit a doctor because she did not have the money in an personal injury action against a lube and tire company.]; *Kroning v. State Farm Automobile Ins.*, 567 N.W.2d 42, 46 (Minn.1997)[Evidence of collateral source of payment allowed to impeach spouse attempting to recover uninsured motorists benefits for accident involving phantom car. General rules of evidence allow impeachment of a witness.]; *James v. Glazer*, 570 A.2d 1150, 1155–56 (Del.1990)[Evidence of disability income allowed to impeach tenant who brought a personal injury action against apartment owners for slip and fall.]; *Corsetti v. Stone Co.*, 396 Mass. 1, 483 N.E.2d 793, 802 (1985)[Court has long recognized exception to collateral source rule for impeachment.]; *Acampora v. Ledewitz*, 159 Conn. 377, 269 A.2d 288, 292 (Conn.1970)[Because testimony made issue of payment, collateral source evidence was admissible for impeachment.]; *Hack v. State Farm Mutual Automobile Ins. Co.*, 37 Wis.2d 1, 154 N.W.2d 320, 325 (1967)[Collateral source evidence allowed for limited purpose of impeaching plaintiff's credibility.]; *Mundy v. Shippers, Inc.*, 783 S.W.2d 743, 744–745 (Tex.App.1990)[Evidence of social security payments allowed as an exception to collateral source rule in longshoreman's personal injury action.]; *Gallaway v. Chrysler Corp.*, 105 Mich. App. 1, 306 N.W.2d 368, 371 (1981)[Evidence of social security or worker's compensation benefits allowed where purpose has some bearing other than mitigating damages.]; *Fahler v. Freeman*, 143 Ind.App. 493, 241 N.E.2d 394, 395–96 (1968)[Evidence that personal injury plaintiff had been reimbursed for medical expenses by insurer was properly admitted for impeachment.].

*But see, Miller v. State Farm Mutual Automobile Ins. Co.*, 993 A.2d 1049, 1053–54 (Del.2010) [Collateral source rule applied to uninsured motorist context to preclude exception to the rule.]; *Kotler v. National Railroad Passenger Corp.*, 402 N.J.Super. 372, 954 A.2d 514, 520 (A.D. 2008)[Where plaintiff was not alleging financial distress, worker's testimony at trial did not "open the door" to admission of evidence that worker received collateral source benefits for injury.]; *Gragg v. Hutchinson*, 217 Or.App. 342, 176 P.3d 407, 411 (2007)[Evidence of insurance benefits was inadmissable and legislature could have carved out an exception but did not.]; *Warren v. Ballard,* 266 Ga. 408, 467 S.E.2d 891, 893–94 (1996)[Testimony over anxiety over medical bills was not a material issue, thus there can be no impeachment of such testimony by collateral source.]; *Thornton v. Sanders*, 756 So.2d 15, ¶ 9 (Miss.App.1999)[No exception to the collateral source rule has been acknowledged in Mississippi.].
Federal courts are also split on the issue. *Gladden v. P. Henderson & Co.*, 385 F.2d 480, 484 (3rd Cir.1967), *cert. denied* 390 U.S. 1013, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968) [Evidence of financial assistance from employer allowed on cross-examination in negligence action brought by longshoreman.]; *Hannah v. Haskins*, 612 F.2d 373, 376 (8th Cir.1980)[Cross-examination of plaintiff to elicit type and source of collateral source payments was proper under circumstances.]. *But see, Sheehy v. Southern Pacific Transportation Co.*, 631 F.2d 649, 653 (9th

¶ 32 Had the Legislature intended this exception to apply to workers compensation retaliatory discharge actions it could have easily incorporated this exception into 85 O.S.2001 § 45 [46] when it codified the common law collateral evidence rule into the Workers' Compensation Act, but it did not. We are not at liberty to carve out an exception to the plain and clear statutory language of § 45. Accordingly, we hold that the collateral source rule applies to retaliatory discharge proceedings, regardless of whether financial hardship has been alleged and the employee is receiving unemployment compensation.

## III.

### ¶ 33 THE ACTUAL DAMAGES AWARDED WERE NOT EXCESSIVE UNDER THE EVIDENCE PRESENTED.

¶ 34 The employee argues that the jury's award of $76,730.00 was supported by the evidence and was not excessive. The employer insists that the damages, if any, were minimal and that the jury's verdict was excessive and unsupported by the evidence. Under the evidence presented, we disagree with the employer.

¶ 35 Damages are a remedy for compensation for a legal wrong or injury.[47] Title 85 O.S.2001 § 6, allows reasonable and actual damages[48] which could ordinarily include mental anguish.[49] The recovery of damages is a jury question.[50] Broad discretion is given to the jury to determine the amount of damages[51] Where the amount of the verdict is within the limits of the evidence, we will not invade the jury's province and substitute our judgment as a fact-finding tribunal.[52] Jury awards will not be reduced unless it appears that the damage award was not supported by the evidence and was so excessive as to appear to have been given under the influence of passion or prejudice.[53]

¶ 36 The evidence showed that the employee was discharged on September 30, 2003, and regained employment by November 23, 2003. The employee provided some evidence of his weekly wages and the length of time he was off work.

¶ 37 Estrada testified that he suffered from mental anguish in that he felt like a "loser" and that it made him feel "sad" and it bothered him a lot because he was unable to provide for his family. His ex-wife, whom he was married to at the time, testified that Estrada was upset. There was competent evidence on which the jury could award $76,730.00. We are not convinced that, with the evidence presented, the jury was obviously influenced by passion or prejudice.[54]

## CONCLUSION

¶ 38 Title 23 O.S. Supp.2002 § 9.1 [55] and 85 O.S.2001 § 6 [56] collectively work together to

Cir.1980)[Error to admit evidence of collateral source.].
See generally, William H. Danne, Admissibility of Evidence that Injured Plaintiff Received Benefits from a Collateral Source, on Issue of Malingering or Motivation to Extend Period of Disability, 47 A.L.R.3d 234 (1973).

46. Title 85 O.S.2001 § 45, see note 43, supra.

47. Carris v. John R. Thomas & Associates, P.C., 1995 OK 33, ¶ 16, 896 P.2d 522; Shannon v. Bridges, 1946 OK 50, ¶ 10, 165 P.2d 976.

48. Title 85 O.S.2001 § 6, see note 10, supra.

49. We have not previously addressed whether mental anguish unaccompanied by physical injury is recoverable under 85 O.S.2001 § 6, see note 10, supra, but we so no reason why it would not be included in "reasonable" damages. While they are not controlling, we do note that other courts have recognized such damages. Williams v. ABS Enterprises, Inc., 1987 OK CIV APP 6, ¶ 7, 734 P.2d 854; Malik v. Apex Intern. Alloys, Inc., 762 F.2d 77 (10th Cir.1985).

50. Carris v. John R. Thomas & Associates, P.C., see note 46, at ¶ 15, supra.

51. Fowler v. Lincoln County Conservation Dist., 2000 OK 96, ¶ 18, 15 P.3d 502.

52. B–Star, Inc. v. Polyone Corp., 2005 OK 8, ¶ 20, 114 P.3d 1082; Fowler v. Lincoln County Conservation Dist., see note 51, supra.

53. B–Star, Inc. v. Polyone Corp., see note 52, supra at ¶ 21; Dodson v. Henderson Properties, Inc., 1985 OK 71, ¶ 6, 708 P.2d 1064.

54. It is extremely rare for a Court to invade the jury's verdict to remit for excessive damages in wrongful termination cases, see generally, Kurtis A. Kemper., Excessiveness or Adequacy of Damages for Wrongful Termination of At–Will Employee Under State Law, 86 A.L.R. 5th 397 (2001).

guide a jury determination of punitive damages in retaliatory discharge action. However, neither statute requires the issue of punitive damages be submitted to the jury where the trial court first determines no competent evidence exists which would warrant punitive damages. Because no evidence was presented in this cause which would warrant the imposition of punitive damages, the trial court erred in submitting the issue to the jury.

¶ 39 The common law collateral source rule has long been incorporated into Workers' Compensation proceedings pursuant to 85 O.S.2001 § 45.[57] While an exception to the rule has been recognized in other jurisdictions to impeach a plaintiff alleging financial hardship, this exception was not included in the Workers' Compensation Act. Until the Legislature expressly includes such an exception, the collateral source rule applies to retaliatory discharge proceedings regardless of whether an employee alleges financial hardship. Under the facts presented, the actual damages awarded by the jury were not excessive.

**TRIAL COURT AFFIRMED IN PART, REVERSED IN PART; REMANDED WITH INSTRUCTIONS FOR THE PUNITIVE DAMAGE AWARD TO BE STRICKEN.**

TAYLOR, C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, GURICH, JJ., concur.

REIF, J., with whom COLBERT, V.C.J., and WATT, J., concurring in part, dissenting in part.

REIF, J., with whom COLBERT, V.C.J., and WATT, J., join, concurring in part; dissenting in part.

¶ 1 I concur in the majority opinion in all respects except the reversal of the punitive damages award. I dissent to reversing the award of punitive damages. I believe there was sufficient evidence to support submission of punitive damages to the jury notwithstanding the doubts expressed by the trial court in this regard. I also believe there was sufficient evidence to support the amount of punitive damages awarded by the jury.